STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JUSTIN D. WEITZ (NYBN 5027966)
JACOB FOSTER (CABN 250785)
Assistant Chiefs, Fraud Section
LAURA CONNELLY (DCBN 241537)
Trial Attorney, Fraud Section

> U.S. Department of Justice, Fraud Section
> 1400 New York Avenue NW
> Washington, DC 20005
> Telephone: 202-262-3520
> Justin.Weitz@usdoj.gov
> Jacob.Foster@usdoj.gov
> Laura.Connelly@usdoj.gov

LLOYD FARNHAM (CABN 202231)
Assistant United States Attorney

> 450 Golden Gate Avenue, Box 36055
> San Francisco, CA 94102-3495
> Telephone: (415) 436-7200
> lloyd.farnham@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-CR-00425 EJD |
| Plaintiff, | |
| v. | UNITED STATES' MOTIONS *IN LIMINE* |
| MARK SCHENA, | Trial Date:  May 10, 2022 |
| Defendant. | |

**TABLE OF CONTENTS**

I.     INTRODUCTION ...............................................................................................7

II.    FACTUAL BACKGROUND ...............................................................................7

III.   DISCUSSION .....................................................................................................8

       A.    The Defendant Should be Precluded from Offering Evidence of Any
             Legitimate Medical Billing or Other Good Conduct as a Defense to the
             Charges in the Superseding Indictment .................................................8

       B.    The Defendant Should Be Precluded From Blaming Medicare or Other
             Insurance Providers For His Fraud .......................................................10

       C.    The Government Should Be Allowed to Introduce Statements of The
             Defendant's Co-Conspirators................................................................11

       D.    The Defendant Should Not Be Allowed to Reference Punishment to the Jury.................13

       E.    The Court Should Exclude Any Out-of-Court Statements Made by the
             Defendant If Offered To Prove the Truth of the Matter Asserted .......14

       F.    The Court Should Preclude The Use of Law Enforcement Agent Interview
             Reports or Rough Notes for Impeachment of Government Witnesses.............15

             1.    Interview Reports Are Not Statements of the Witness Under the Jencks
                   Act..............................................................................................15

             2.    Proper Use of the Reports at Trial .............................................16

       G.    Other Evidentiary Issues ......................................................................17

             1.    Argument That Encourages Jurors To Ignore The Law, Not Follow
                   This Court's Instructions, or Otherwise Violate Their Oaths As Jurors...............18

             2.    Which Other persons Have, or Have Not, Been Charged In This or
                   Other Cases ................................................................................18

IV.    CONCLUSION..................................................................................................20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                      **Page(s)**

3

4

*Bourjaily v. United States*,
   483 U.S. 171 (1987) .............................................................................. 12, 13

5

*Goldberg v. United States*,
   425 U.S. 94 (1976) .................................................................................... 16

6

7

*Herzog v. United States*,
   226 F.2d 561 (9th Cir. 1955) ..................................................................... 9

8

*Huitron v. Finn*,
   2003 WL 22159060 (N.D. Cal. Sept. 15, 2003).................................... 18

9

10

*Merced v. McGrath*,
   426 F.3d 1076 (9th Cir. 2005) ................................................................. 18

11

*Palermo v. United States*,
   360 U.S. 343 (1959) .......................................................................... 15, 16

12

13

*Pope v. United States*,
   298 F.2d 507 (5th Cir. 1962) ................................................................... 13

14

*Rogers v. United States*,
   422 U.S. 35 (1975) ................................................................................... 14

15

16

*Shannon v. United States*,
   512 U.S. 573 (1994) ................................................................................. 14

17

18

*United States v. Brewer*,
   947 F.2d 404 (9th Cir. 1991) ................................................................... 13

19

*United States v. Brika*,
   416 F.3d 514 (6th Cir. 2005) ................................................................... 17

20

21

*United States v. Carneglia*,
   2009 U.S. Dist. LEXIS 8450 (E.D.N.Y. Jan. 27, 2009) ........................ 18

22

23

*United States v. Claiborne*,
   765 F.2d 784 (9th Cir.1985) .................................................................... 17

24

*United States v. Collicott*,
   92 F.3d 973 (9th Cir. 1996) ..................................................................... 15

25

26

*United States v. Colton*,
   231 F.3d 890 (4th Cir. 2000) ................................................................... 11

27

*United States v. Diaz*,
   961 F.2d 1417 (9th Cir. 1992) ................................................................. 10

28

*United States v. Dimora,*
   750 F.3d 619 (6th Cir. 2014) ............................................................. 9

*United States v. Ellis,*
   2020 WL 1676772 (D. Nev. Apr. 6, 2020) ....................................... 18

*United States v. Ellison,*
   704 F. App'x 616 (9th Cir. 2017) .................................................... 10

*United States v. Ellisor,*
   522 F.3d 1255 (11th Cir. 2008) ........................................................ 9

*United States v. Fernandez,*
   839 F.2d 639 (9th Cir. 1988) ........................................................... 15

*United States v. Frank,*
   956 F.2d 872 (9th Cir. 1992) .................................................... 13, 14

*United States v. Hill,*
   526 F.2d 1019 (10th Cir. 1975) ...................................................... 17

*United States v. Inadi,*
   475 U.S. 387 (1986) ........................................................................ 11

*United States v. King,*
   472 F.2d 1 (9th Cir. 1972) .............................................................. 12

*United States v. Kot,*
   2012 WL 1657118 (D. Nev. May 10, 2012) .................................. 17

*United States v. Lara,*
   2018 WL 1225204 (E.D. Calif. 2018) .............................................. 9

*United States v. Larch,*
   399 F. App'x 50 (6th Cir. 2010) ..................................................... 18

*United States v. Layton,*
   720 F.2d 548 (9th Cir. 1983) ......................................................... 11

*United States v. Leonardi,*
   623 F.2d 746 (2d Cir.1980) ............................................................ 17

*United States v. Lindsey,*
   850 F.3d 1009 (9th Cir. 2017) ....................................................... 10

*United States v. Lynch,*
   903 F.3d 1061 (9th Cir. 2018) ....................................................... 18

*United States v. Marrero,*
   904 F.2d 215 (5th Cir. 1990) ........................................................... 9

*United States v. Ortega,*
   203 F.3d 675 (9th Cir. 2000) .................................................... 14, 15

*United States v. Palamarchuk*,
  791 F. App'x 658 (9th Cir. 2019) ....................................................... 11

*United States v. Paris*,
  827 F.2d 395 (9th Cir. 1987) ........................................................... 12

*United States v. Powell*,
  955 F.2d 1206 (9th Cir. 1991) .......................................................... 18

*United States v. Powell*,
  982 F.2d 1422 (10th Cir. 1992) ........................................................ 12

*United States v. Re*,
  401 F.3d 828 (7th Cir. 2005) ........................................................... 19

*United States v. Reed*,
  726 F.2d 570 (9th Cir. 1984) ........................................................... 14

*United States v. Scarpa*,
  897 F.2d 63 (2d Cir. 1975) ............................................................... 9

*United States v. Simpson*,
  460 F.2d 515 (9th Cir.1972) ............................................................ 18

*United States v. Svete*,
  556 F.3d 1157 (11th Cir. 2009) ........................................................ 11

*United States v. Thomas*,
  116 F.3d 606 (2d Cir. 1997) ............................................................ 18

*United States v. Thompson*,
  253 F.3d 700 (5th Cir. 2001) ........................................................... 19

*United States v. Tones*,
  759 F. App'x 579 (9th Cir. 2018) ...................................................... 17

*United States v. Torres*,
  908 F.2d 1417 (9th Cir. 1990) .......................................................... 12

*United States v. Williams*,
  989 F.2d 1061 (9th Cir. 1993) .......................................................... 12

*United States v. Winograd*,
  656 F.2d 279 (7th Cir. 1981) ............................................................. 9

*United States v. Yarborough*,
  852 F.2d 1522 (9th Cir. 1988) .......................................................... 12

*United States v. Zavala-Serra*,
  853 F.2d 1512 (9th Cir. 1988) .......................................................... 12

**Other**

Fed. R. Evid. 104 ........................................................................................ 12, 13

Fed. R. Evid. 106 ........................................................................................ 14, 15

Fed. R. Evid. 404 .......................................................................................... 9, 10

Fed. R. Evid. 613 ............................................................................................... 16

Fed. R. Evid. 801 ............................................................................ 11, 12, 13, 14

18 U.S.C. § 3500 ............................................................................................... 15

**I.     INTRODUCTION**

The Government respectfully submits the following motions in limine for the Court's consideration seeking: (1) to preclude evidence of any legitimate medical billing or other good conduct; (2) to preclude evidence and argument blaming the victims of his fraud; (3) to allow the Government to introduce co-conspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E); (4) to preclude reference by the defense to punishment; (5) to preclude the defendant from introducing his own statements; (6) to preclude the use of law enforcement agent interview reports or notes for impeachment purposes; (7) to preclude the defense from arguments and evidence about jury nullification and the Government's decisions related to other persons who have or have not been charged in this case.

The Government would respectfully request the opportunity to supplement these motions in limine in case any additional legal issues requiring the Court's intervention arise.  Likewise, because the defendant has not yet provided any reciprocal discovery as required under Fed. R. Crim. P. 16(b), the Government would also request the opportunity to supplement these motions in limine to address any issues triggered by the defense.

**II.    FACTUAL BACKGROUND**

Mark Schena ("the defendant"), the president of Arrayit Corporation ("Arrayit"), is charged in a superseding indictment with a scheme commit health care fraud, securities fraud, and to offer and pay illegal kickbacks.  Arrayit was a publicly traded medical technology company based in Sunnyvale, California that claimed to employ "microarray technology" for allergy and COVID-19 testing that allows for laboratory testing based on a finger-prick drop of blood that is placed on a paper card and sent by mail to Arrayit's laboratory.   Schena and others were involved in a conspiracy to submit false and fraudulent allergy test claims to the Medicare Program, Medicaid Program, TRICARE program, and private health insurance companies.  The superseding indictment alleges that this conspiracy involved, inter alia: (i) the submission of claims for services that were procured through the payment of kickbacks and bribes; (ii) patients receiving medically unnecessary treatment; (iii) services that were not eligible for reimbursement; and (iv) services that were not provided as represented.

Prior to 2018, Arrayit offered its microarray technology for sale to third parties.  In 2018, Arrayit pivoted to billing insurance for allergy testing that it conducted.  Though Medicare's rules and

regulations limit blood-based allergy testing to situations where skin testing is not possible or not reliable (such as where patients have severe skin conditions) and the number of allergens tested for must be reasonable, Arrayit paid kickbacks and bribes to recruiters and doctors to run a multiallergen blood screening test for 120 allergens (including things ranging from stinging insects to food allergens) on every patient regardless of medical necessity.

At the same time, Schena and others also made misrepresentations to potential investors about Arrayit's allergy test sales, financial condition, future prospects, and business relationships with large public companies and government agencies.  Schena used various modes of communication, including press releases, Twitter, and email to promote false and misleading information about Arrayit to investors, including:

- Statements about the status of Arrayit's financial reports;
- Statements about the health of Arrayit's business, including the amount of revenue Arrayit was receiving and the degree to which Arrayit was billing insurance; and
- Statements about Arrayit's relationships with public companies and government agencies, including Sutter Health and the Palo Alto Medical Foundation and the U.S. Department of Veterans Affairs.

In March 2020, Schena and others began making misrepresentations about Arrayit's ability to provide accurate, fast, reliable, and cheap COVID-19 tests in compliance with applicable regulations.  In early March 2020, Arrayit began promoting a test for COVID-19 through its website and attempted to exploit the pandemic by claiming that it could test dried blood samples for both allergens and COVID-19.  Arrayit also instructed its patient recruiters and clinics to add on or bundle Arrayit's allergy test and COVID-19 test regardless of medical necessity.

## III.   DISCUSSION

### A.   *The Defendant Should be Precluded from Offering Evidence of Any Legitimate Medical Billing or Other Good Conduct as a Defense to the Charges in the Superseding Indictment*

The defendant should be precluded from arguing, eliciting on direct or cross examination, or offering any evidence at trial of specific acts of good conduct, including evidence of: (1) legitimate billing by the defendant and (2) the provision of legitimate services by the defendant.  This evidence is

not probative of the defendant's alleged health care and securities fraud schemes.  If admitted, the evidence will confuse and mislead the jury.  Further, even if the evidence has some probative value, it should nonetheless be excluded under Federal Rule of Evidence 404 because it constitutes inadmissible character evidence.

Evidence of the defendant's legitimate business activities outside the charged conduct is irrelevant to the criminal conduct alleged in the superseding indictment and constitutes inadmissible character evidence.  The Ninth Circuit has consistently held that "a defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions."  *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955).  In fraud cases, the Ninth Circuit, and other circuit courts, have affirmed that a defendant engaged in legal, honest conduct some of the time has no relevancy to whether the defendant engaged in, or had knowledge of, fraudulent conduct charged by the Government.  *See also United States v. Lara*, 2018 WL 1225204 at *1 (E.D. Calif. 2018) (defendant charged with filing fraudulent tax returns not allowed to introduce evidence of other, non-fraudulent tax returns to establish innocence of charged conduct.); *United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) ("For the same reason that prior 'bad acts' may not be used to show predisposition to commit crimes, prior 'good acts' generally may not be used to show a predisposition not to commit crimes."); *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) (affirming district court's ruling precluding the defendant from offering evidence of his legitimate business activities because "evidence of good conduct is not admissible to negate fraudulent intent"); *United States v. Marrero*, 904 F.2d 215 (5th Cir. 1990) (excluding defendant psychologist from offering evidence of legitimate billings in false claims act case because it was irrelevant that the defendant "did not overcharge in every instance in which she had the opportunity to do so"); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."); *United States v. Winograd*, 656 F.2d 279 (7th Cir. 1981) (finding defendant's performance of some legal trades irrelevant to his knowledge of illegal trades).

Here, the Government has alleged that the defendant conspired to execute the fraudulent health care and securities schemes outlined in the superseding indictment.  The Defendant should not be permitted to introduce any anecdotal evidence of legitimately billing insurance companies or providing

legitimate services because this evidence does not tend to disprove the defendant's participation in the charged scheme to defraud insurance and federal health care programs.  Even if the defendant provided legitimate services and billings in other instances, this evidence does not mean he did not provide illegitimate services or fraudulently billed insurance and federal health care programs in this case.  Thus, any evidence of legitimate services provided irrelevant and thus inadmissible.

Moreover, evidence of "good acts" or legitimate business activity, when offered by the defendant, is improper character evidence.  Fed. R. Evid. 404 ("Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith.").  While a defendant can offer evidence of his character for general law-abidingness under Rule 404(a)(1), a defendant cannot offer evidence that he lacks the propensity to engage in the type of crime charged.  *See United States v. Diaz*, 961 F.2d 1417, 1419 (9th Cir. 1992) (where defendant could not provide testimony concerning his propensity to engage in drug dealing because this testimony went to the drug charge and not general law-abidingness).

In this case, evidence of the defendant's "good acts" or legitimate billing or business activity does not relate to a pertinent character trait and does not establish that the defendant generally has a law-abiding character.  Instead, such evidence would only be introduced by the defendant to demonstrate he did not commit fraud in this case, and so is inadmissible under Rule 404(a)(1).  *Diaz*, 961 F.2d at 1419–20.

### B.  *The Defendant Should Be Precluded From Blaming Medicare or Other Insurance Providers For His Fraud*

The defendant should be precluded from making any argument that because Medicare and other insurance providers failed to detect the defendant's fraud or paid his claims, he could have not defrauded them or known his practices were illegal.  The defendant should not be allowed to shift his culpability to the victims of his fraud.  Such evidence is irrelevant and should be excluded.

Because evidence of Medicare and other insurance providers' failure to detect the fraud does not have any tendence to prove or disprove any element of the charged offenses, whether they acted negligently is irrelevant to whether the defendant committed fraud.  The Ninth Circuit has held that evidence of a victim's alleged negligence is not relevant and is properly excluded at trial.  *United States*

*v. Lindsey*, 850 F.3d 1009, 1015 (9th Cir. 2017) ("We join several of our sister circuits in holding that a victim's negligence is not a defense to wire fraud."); *United States v. Ellison*, 704 F. App'x 616, 620 (9th Cir. 2017) ("a victim's negligence is not a defense" to securities fraud); *United States v. Palamarchuk*, 791 F. App'x 658, 660 (9th Cir. 2019) ("neither individual victim lender negligence nor an individual victim lender's intentional disregard of relevant information is a defense to mail fraud"); *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) ("A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence."); *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) ("it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright."). Furthermore, in *Palamarchuk*, the Ninth Circuit approved the district court's exclusion of certain evidence related to "the conduct and motives of the victim lenders," noting that "neither individual victim lender negligence nor an individual victim lender's intentional disregard of relevant information is a defense to mail fraud." 791 F. App'x at 660.

In this case, the defendant should be prohibited from arguing that the victims' negligence or intentional disregard of his false statements absolves him from liability. The superseding indictment alleges the defendant fraudulently billed Medicare, Medicaid, TRICARE, and Commercial Insurers. Thus, the defendant should not be permitted to argue that these victims should have discovered the fraud and denied the fraudulent claims, or to assert that they led him to believe that his conduct was legitimate when they paid these fraudulent claims. Even if the victims were at fault—which they were not—such evidence would still be irrelevant, immaterial, and could not provide any defense to the charged fraud scheme.

### C.   *The Government Should Be Allowed to Introduce Statements of The Defendant's Co-Conspirators*

The Government will offer at trial statements that the Defendant and co-conspirators made in furtherance of the illegal kickback and health care fraud conspiracy, and securities fraud conspiracy alleged in Counts One and Four of the Superseding Indictment. These statements will be in the form of witness testimony and documents. Pursuant to Federal Rule of Evidence 801(d)(2)(E), statements of co-conspirators made in furtherance of the fraudulent scheme are not considered hearsay. *See United States v. Inadi*, 475 U.S. 387, 394-95 (1986); *United States v. Layton*, 720 F.2d 548, 555 (9th Cir. 1983).

Under the Rule, a jury can consider the truth of a co-conspirator's out-of-court statement when: (1) a conspiracy existed at the time of the statement; (2) the member of the conspiracy against whom the statement is introduced had knowledge of, and participated in, the conspiracy; and (3) the statement was made in furtherance of the conspiracy.  Fed. R. Evid. 801(d)(2)(E); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  A showing that the declarant is not available to testify is unnecessary.  *United States v. Paris*, 827 F.2d 395, 400-01 (9th Cir. 1987).  Both oral and written declarations are admissible under the co-conspirator exception to the hearsay rule.  *United States v. King*, 472 F.2d 1, 8-9 (9th Cir. 1972).  Additionally, the person to whom the statement was made need not have been a member of the scheme.  *United States v. Williams*, 989 F.2d 1061, 1068 (9th Cir. 1993).

To be "in furtherance" of, a statement must advance a common objective of the scheme or set in motion a transaction that is an integral part of the scheme.  *United States v. Yarborough*, 852 F.2d 1522, 1535-36 (9th Cir. 1988).  In the conspiracy context in *Yarborough*, the Ninth Circuit delineated some statements that have been found to be in furtherance of a joint venture: (1) statements made to induce enlistment or further participation in the group's activities; (2) statements made to prompt further action on the part of conspirators; (3) statements made to reassure members of a conspiracy's continued existence; (4) statements to allay a co-conspirator's fears; and (5) statements made to keep co-conspirators abreast of an ongoing conspiracy's activities.  *Id.*  In determining if a scheme or conspiracy exists, relevant areas of inquiry include the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each co-conspirator's transactions; and the commonality of goals and times.  *United States v. Torres*, 908 F.2d 1417, 1425 (9th Cir. 1990).

The order of proof is in the sound discretion of the trial judge, and the court may make the determination that a conspiracy exists either prior to trial or during trial or may conditionally admit co-conspirator hearsay prior to a finding of scheme involvement, subject to the hearsay being "connected up" to the alleged co-conspirator.  *See United States v. Powell*, 982 F.2d 1422, 1432 (10th Cir. 1992); *see also United States v. Zavala-Serra*, 853 F.2d 1512, 1514 (9th Cir. 1988).

Federal Rule of Evidence Rule 104(a) provides that

> Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination *it is not bound by the rules of evidence except those with respect to privileges*.

(emphasis added). Consistent with Rule 104's plain meaning, the Supreme Court has held that in making a preliminary factual determination as to the admissibility of evidence, with the exception of privileged information, a trial court may consider "any evidence whatsoever" and "receive the evidence and give it such weight as his judgment and experience counsel." *Bourjaily v. United States*, 483 U.S. 171, 178 (1987). Similarly, "[i]n determining whether the Government established the existence of a conspiracy for the purpose of Fed. R. Evid. 801(d)(2)(E), Rule 104 'on its face allows the trial judge to consider any evidence whatsoever, bound only by the rules of privilege.'" *United States v. Brewer*, 947 F.2d 404, 409 (9th Cir. 1991) (*quoting Bourjaily v. United States*, 483 U.S. 171, 178 (1987)).

Thus, under Rule 104(a), the Court should look to evidence already presented to it when it decides the admissibility of co-conspirator statements under Rule 801(d)(2)(E) at trial. Such evidence includes, for example, the fact that certain co-conspirators in this case have pleaded guilty and have admitted to their participation in the conspiracy to defraud health care programs and conspiracy to pay and receive kickbacks.

## D.    *The Defendant Should Not Be Allowed to Reference Punishment to the Jury*

The Government moves to preclude, as irrelevant and prejudicial, any reference by the defense to the defendant's potential sentence during all phases of the trial (including jury selection, opening statements, examination of witnesses, including the defendant if he elects to testify, and summation). That reference could be as overt as, "You understand the defendant is facing a potential life prison term if convicted," or more subtle such as, "the defendant is facing a lot of time," "this case has serious consequences for the defendant," "the defendant's liberty is at stake in this trial," or "your decision will have consequences for a long time to come." Once the jury hears anything about punishment, the bell simply cannot be un-rung or the damage neutralized by a curative instruction.

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992). As explained

in *Pope v. United States*, 298 F.2d 507 (5th Cir. 1962):

> To inform the jury that the court may impose minimum or maximum sentence, will or will not grant probation, when a defendant will be eligible for parole, or other matters relating to disposition of the defendant, tend to draw the attention of the jury away from their chief function as sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided.

*Id*. at 508; *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion"); *Rogers v. United States*, 422 U.S. 35, 40 (1975) (explaining that jury should have been admonished that it "had no sentencing function and should reach its verdict without regard to what sentence might be imposed"); *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984) (holding that trial judge properly instructed jury that the "punishment provided by law for the offenses charged in the indictment are matters exclusively within the province of the court.  It should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused").  Therefore, defense counsel should be precluded from making any reference in the presence of the jury to punishment in statements, questions or argument.

### E.  The Court Should Exclude Any Out-of-Court Statements Made by the Defendant If Offered To Prove the Truth of the Matter Asserted

The Government intends to introduce inculpatory statements made by the defendant to federal law enforcement agents and others, and requests that the Court preclude the defendant from offering his own out of court statements in his case or through cross examination of other witnesses.  Under Federal Rule of Evidence 801(d)(2), the defendant's prior out-of-court statements are not hearsay when offered against him by the Government.  However, those statements remain inadmissible hearsay when offered by the defendant for the truth of the matter asserted.  *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("The self-inculpatory statements, when offered by the Government, are admissions by a party-opponent and are therefore not hearsay, *see* Fed. R. Evid. 801(d)(2), but the non-self inculpatory statements are inadmissible hearsay.").

Moreover, the rule of completeness as codified in Federal Rule of Evidence 106 does not permit

1    the defendant to introduce self-exculpatory hearsay simply because the Government admits other

2    statements of the defendant through its witnesses.  Rule 106, on its face, only applies to written or

3    recorded statements, *see also Ortega*, 203 F.3d at 682, and only when "fairness" dictates that another

4    portion of that writing or recording "ought to be considered at the same time." Fed. R. Evid. 106.  Even

5    then, "Rule 106 'does not compel admission of otherwise inadmissible hearsay evidence.'" *United*

6    *States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996) (quoting *Phoenix Assocs. III v. Stone*, 60 F.3d 95,

7    103 (2d Cir. 1995)); *see also Ortega*, 203 F.3d at 682 ("Even if the rule of completeness did apply,

8    exclusion of Ortega's exculpatory statements was proper because these statements would still have

9    constituted inadmissible hearsay." (*citing Collicott*)).

10        If a defendant were allowed to introduce his exculpatory statements without subjecting himself

11   to cross-examination, he would be doing precisely what the hearsay rule forbids.  *United States v.*

12   *Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988).  The defendant should not be permitted to introduce this

13   exculpatory statement through cross-examination of the witness because it is hearsay if offered by the

14   defendant and is not admissible in this Circuit under the Rule of Completeness.

15   ### F.    The Court Should Preclude The Use of Law Enforcement Agent Interview Reports or Rough Notes for Impeachment of Government Witnesses

16   #### 1.    Interview Reports Are Not Statements of the Witness Under the Jencks Act

17        The court should preclude defense counsel from using interview reports prepared by Government

18   agents to cross examine witnesses that were the subjects of these memoranda because they are not

19   "statements" made by those witnesses.  A statement within the meaning of the Jencks Act is defined as

20   (1) "a written statement made by said witness and signed or otherwise adopted and approved by him,"

21   (2) a recording or transcription that "is a substantially verbatim recital of an oral statement made by said

22   witness and recorded contemporaneously," or (3) a statement made by a witness to the grand jury.  18

23   U.S.C. § 3500(e)(1)–(e)(3).  In *Palermo v. United States*, the Supreme Court affirmed that congress

24   intended for "only those statements which could properly be called the witness' own words [to] be made

25   available to the defense" under the Jencks Act.  360 U.S. 343, 352 (1959) (holding that Federal Bureau

26   of Investigation interview reports do not constitute statements requiring disclosure under Jencks Act

27   because witness did not approve the statements contained therein and because they were not drafted

contemporaneously with the witness' accounts).  The Court held that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced." *Id.* at 352–53.

Consistent with *Palermo*, the interview reports in this case are not discoverable under the Jencks Act because they are not statements of the witness within the meaning of subsection (e)(1) of the statute. While subsection (e)(1) does apply to statements adopted or approved by the witness, here, the witness has neither adopted nor approved statements, therefore, the adoption requirement "clearly is not met [because] [] the [writer] [did] not read back, or the witness [did] not read, what the [writer] has written." *Goldberg v. United States*, 425 U.S. 94, 110 n.19 (1976).

In sum, although the Government has consistently turned over relevant interview reports in this case, there are no interview reports that have been adopted or approved by the witness under subsection (e)(1) such that they can be considered statements of the witness.  They are statements of Government agents summarizing the substance of a witness interview.  It would be improper to cross-examine a witness on the summary created by another individual, and defense counsel should be precluded from doing so.

## 2. *Proper Use of the Reports at Trial*

The Court should limit the use of the interview reports consistent with the law and rules of evidence.  The defense should be precluded from introducing the contents of the interview reports to impeach witnesses based on prior inconsistent statements because the interview reports are not considered statements of the witnesses.  *See* Fed. R. Evid. 613.  Additionally, defense counsel should be precluded from publishing the contents of the interview reports to the jury, holding up the interview report and reading parts of it before the jury in the form of a question posed to the witness, or otherwise suggesting to the jury that the interview report is a statement of the witness.  To allow otherwise would subvert the meaning of the Jencks Act and the Supreme Court's decision in *Palermo*, which held that it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations and interpolations." *Palermo*, 360 U.S. at 350.

While the defense is free to ask a witness whether he or she made a statement that is reflected in

1   an interview report, the defense may not publish or introduce the contents of the report as a prior

2   inconsistent statement if the defense is not satisfied with the witness' answer.  The Ninth Circuit has

3   held, generally, that "a third party's characterization of a witness's statement is not attributable to the

4   witness for impeachment purposes."  *United States v. Tones*, 759 F. App'x 579, 585 (9th Cir. 2018)

5   (finding the district court did not abuse its discretion in declining to admit statements of two cooperating

6   witnesses in law enforcement reports that they had not seen to impeach them).  More specifically, "every

7   circuit court to address [this] question, including the Ninth Circuit, has held that FBI 302s generally are

8   not discoverable under the Jencks Act." *United States v. Kot*, 2012 WL 1657118, at *1 (D. Nev. May 10,

9   2012), *aff'd*, 583 F. App'x 716 (9th Cir. 2014); *see also United States v. Claiborne*, 765 F.2d 784, 801

10  (9th Cir.1985), *abrogated on other grounds by Ross v. Oklahoma*, 487 U.S. 81 (1988) (because "the

11  summaries represent ... the agents' selection of certain information ... the district court properly

12  characterized the summaries as non-Jencks Act material."); *United States v. Brika*, 416 F.3d 514, 529

13  (6th Cir. 2005), *abrogated on other grounds by*, *United States v. Booker*, 543 U.S. 222 (2005) (holding

14  that "[s]uch documents [i.e., interview reports] have been deemed inadmissible for impeaching

15  witnesses on cross-examination because they represent the 'investigator's selections, interpretations and

16  interpolations"); *United States v. Hill,* 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's

17  decision to "not allow counsel to use the 302 statement to impeach a witness because the witness did not

18  prepare or sign the document and probably never adopted it"); *United States v. Leonardi*, 623 F .2d 746,

19  757 (2d Cir.1980) (holding that because "the written statement of the FBI agent was not attributable to

20  [the witness]" it was "properly rejected as a prior inconsistent statement").

21      Further, the defense may not use the interview report in a way that suggests to the jury the

22  interview report is a statement of the witness.  *See Kot*, 2012 WL 1657118, at *2  (citing *United States v.*

23  *Marks*, 816 F.2d 1207, 1210–11 (7th Cir.1987) (holding that where defense counsel read from a 302

24  during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the

25  judge was entitled to require the witness be shown the 302 and given the opportunity to adopt or reject it

26  as a statement, although such a practice was no longer required by the Federal Rules of Evidence)).

27      **G.    Other Evidentiary Issues**

28          The Government sets forth its position that the defendant should be precluded from eliciting

testimony or otherwise producing evidence on the following topics:

### 1.     *Argument That Encourages Jurors To Ignore The Law, Not Follow This Court's Instructions, or Otherwise Violate Their Oaths As Jurors*

The defendant should be precluded from arguing or seeking to admit evidence for the purpose of encouraging the jury to nullify its verdict.  Jury nullification is "a violation of a juror's oath to apply the law as instructed by the court."  *United States v. Lynch*, 903 F.3d 1061, 1079 (9th Cir. 2018) (quoting *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997)).  The Ninth Circuit also made clear that "no juror has the right to engage in nullification" and courts have a "duty to forestall or prevent such conduct." *Merced v. McGrath*, 426 F.3d 1076, 1079–80 (9th Cir. 2005) (quoting *United States v. Thomas*, 116 F.3d 606, 617 (2d Cir. 1997).  Moreover, a "defendant has no right to a [nullifying] instruction informing the jury of that power, and the court has no duty to give one."  *Huitron v. Finn*, 2003 WL 22159060, at *2 (N.D. Cal. Sept. 15, 2003); *see also United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1991) (upholding the refusal of defendant's request for an instruction on nullification because "our circuit's precedent indicates that the [defendant is] not entitled to jury nullification instructions.") (*citing United States v. Simpson*, 460 F.2d 515, 519 (9th Cir.1972)).

Because "trial courts have the duty to forestall or prevent such conduct," *Merced*, 116 F.3d at 616, the Government moves to exclude evidence and to preclude argument designed to convince the jury to acquit not because the Government failed to prove the charged crimes, but rather because a guilty verdict would be contrary to one's sense of justice, morality, or fairness.

### 2.     *Which Other Persons Have, or Have Not, Been Charged in This or Other Cases*

This Court should prohibit the defendant from presenting evidence that other individuals or entities should have been charged in a like manner as the defendant.  "The law is well settled that government charging decisions and motivations for such decisions is an issue for the court to resolve before trial; it is not a proper consideration for the jury."  *United States v. Ellis*, 2020 WL 1676772, at *1 (D. Nev. Apr. 6, 2020); *see also United States v. Carneglia*, 2009 U.S. Dist. LEXIS 8450, at *3 (E.D.N.Y. Jan. 27, 2009) ("Evidence related to the government's charging decisions may be excluded at trial based on lack of relevance"); *United States v. Larch*, 399 F. App'x 50, 55-56 (6th Cir. 2010) (explaining that guilt of another does not excuse a defendant from liability for his actions).

The identity and quantity of individuals charged in connection with this fraud, the reasons behind those charging decisions, and the culpability of the defendant as compared to other individuals are all examples of irrelevant and unfairly prejudicial evidence aimed at jury nullification. *See, e.g., United States v. Thompson*, 253 F.3d 700 (5th Cir. 2001) (upholding granting government's motion in limine to prevent defense counsel from comparing defendant's conduct with that of other uncharged or immunized witnesses); *United States v. Re*, 401 F.3d 828, 832 (7th Cir. 2005) (government's exercise of prosecutorial discretion is not proper subject for cross-examination).

Evidence that the Government could have charged other individuals with committing similar violations is irrelevant. The particular charging choices of the Government may rely upon a variety of considerations, and those decisions regarding one individual do not necessarily speak to the separate issue of another individual's guilt or innocence.

The possible guilt of others in unrelated matters is irrelevant to the question of whether the defendant is guilty of the crimes charged in this Superseding Indictment. This type of cross-examination can have no other purpose except to unfairly prejudice the Government by raising issues of prosecutorial discretion that have nothing to do with the crimes charged or the evidence presented in this case. Thus, the defendant should be precluded from making arguments or comments to the jury, and from eliciting statements on cross-examination, that are irrelevant to the record evidence and crimes charged and that are, instead, designed to encourage a verdict in disregard of the law.

1

## IV.     CONCLUSION

2         For all of the foregoing reasons, the Court should rule as set forth above if and when the issues

3  identified arise.  The Government would respectfully reserve the right to supplement these motions in

4  limine if additional issues requiring the Court's ruling arise.

5

6  DATED: March 25, 2022                                    Respectfully submitted,

7                                                           STEPHANIE M. HINDS

8                                                           United States Attorney

9

10                                                           ___/s/_____

     JUSTIN D. WEITZ

11                                                           JACOB FOSTER
     Assistant Chiefs

12                                                           LAURA CONNELLY
     Trial Attorney

13                                                           Fraud Section, U.S. Department of Justice

14                                                           ___/s/_____

     LLOYD FARNHAM

15                                                           Assistant United States Attorney

16

17

18

19

20

21

22

23

24

25

26

27

28