UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| USA,<br><br>                    Plaintiff,<br><br>           v.<br><br>MARK SCHENA,<br><br>                    Defendant. | Case No.   5:20-cr-00425-EJD-1<br><br>**ORDER RE MOTIONS *IN LIMINE***<br><br>Re: Dkt. Nos. 107, 108, 109, 110, 111, 112,<br>113, 114, 115, 116, 117, 118, 119, 120, 121,<br>122 |

On May 18, 2021, a federal grand jury returned a Superseding Indictment, charging Defendant Mark Schena with one count of conspiracy to commit health care fraud (Count 1) in violation of 18 U.S.C. § 1349, one count of conspiracy to pay kickbacks (Count 4) in violation of 18 U.S.C. § 371, two counts of health care fraud (Counts 2 & 3) in violation of 18 U.S.C. § 1347 and 18 U.S.C. § 2, two counts of illegal kickbacks (Counts 5 & 6) in violation of 18 U.S.C. § 220(a)(2)(A) and 18 U.S.C. § 2, and three counts of securities fraud (Counts 7–9) in violation of 15 U.S.C. §§ 78j & 78ff, 17 C.F.R. 240.10b-5, and 18 U.S.C. § 2.  Superseding Indictment ("SI"), Dkt. No. 53.  Defendant is charged with submitting false and fraudulent allergy test claims to the Medicare Program, Medicaid Program, TRICARE program, and private health insurance companies.

In anticipation of trial, Defendant and the Government filed motions *in limine* ("MIL"). *See* United States' Motions *in Limine* ("Govt. MIL"), Dkt. No. 107; Defendant's Motion *in Limine* ("Def. MIL"), Dkt. Nos, 108–22.[1]  Both Parties timely opposed and replied in support of their respective motions.  *See* Defendant's Opposition to the Government's Motions *in Limine* ("Def.

---

[1] Defendant filed his motions *in limine* as separate motions, *i.e.*, Defendant's Motion *in Limine* No. 1.  The Court will use "No. 1," "No. 2," etc. to connote which MIL it is discussing.  The same identification structure will be used for the Government's oppositions.

Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*

1

United States District Court
Northern District of California

1  Opp."), Dkt. No. 142; United States' Replies in Support of Motions *in Limine* ("Govt. Reply"),

2  Dkt. No. 168; United States' Opposition to Defendant's Motion *in Limine* ("Govt. Opp."), Dkt.

3  Nos. 150–65; Defendant's Consolidated Reply in Support of Defendant's Motions *in Limine*

4  ("Def. Reply"), Dkt. No. 169.  Having considered the Parties' arguments, the relevant law, and the

5  record in this case, the Court **GRANTS in part** and **DENIES in part** the following motions *in*

6  *limine*, as set forth below.

7      **I.**       **BACKGROUND**

8        Defendant Mark Schena, the president of Arrayit Corporation ("Arrayit"), is charged with

9  a scheme to commit health care fraud, securities fraud, and to offer and pay illegal kickbacks.

10  Arrayit was a publicly traded medical technology company based in Sunnyvale, California.

11  Arrayit claimed to employ "microarray technology" for allergy and COVID-19 testing.  As alleged

12  by the SI, Defendant claimed that the "microarray technology" allowed for laboratory testing of a

13  finger-prick drop of blood placed on a paper card and sent by mail to Arrayit's laboratory.  SI

14  ¶ 37.  The SI alleges that this conspiracy involved (1) the submission of claims for services that

15  were procured through the payment of kickbacks and bribes; (2) patients receiving medically

16  unnecessary treatment; (3) services that were not eligible for reimbursement; and (4) services that

17  were not provided as represented.  SI ¶ 35.

18        In or around May 2018, Defendant and others announced that Arrayit had developed

19  revolutionary technology that allowed Arrayit to test for exposure to 120 common food and

20  environmental allergens with only a single drop of blood from a finger stick sample.  SI ¶ 37.

21  Arrayit billed insurance for the allergy testing that it conducted.  Though Medicare's rules and

22  regulations limit blood-based allergy testing to situations where (1) skin testing is not possible or

23  is not reliable and (2) the number of allergens tested is reasonable, Arrayit allegedly paid

24  kickbacks and bribes to recruiters and doctors to run a multiallergen blood screening test on every

25  patient, even if not "medical necessary" within the meaning of the relevant statutes.

26        At the same time, Defendant and others allegedly made misrepresentations to potential

27  investors about Arrayit's allergy test sales, financial condition, prospects, and business

28  Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*

2

relationships.  Defendant used various modes of communication, including press releases, Twitter, and email to communicate with investors and potential investors.  Defendant made statements about:

- The status of Arrayit's financial reports;
- The health of Arrayit's business, including the amount of revenue Arrayit was receiving and the degree to which Arrayit was billing insurance; and
- Arrayit's relationships with public companies and government agencies, including Sutter Health and the Palo Alto Medical Foundation and the U.S. Department of Veteran Affairs.

In March 2020, Defendant and others allegedly began making misrepresentations about Arrayit's ability to provide accurate, fast, reliable, and affordable COVID-19 tests in compliance with applicable regulations.  SI ¶ 32.  In early March 2020, Arrayit began promoting a test for COVID-19 on its website and claimed that it could test dried blood samples for both allergens and COVID-19.  Arrayit also allegedly instructed its patient recruiters and clinics to add on or bundle Arrayit's allergy test and COVID-19 test regardless of medical necessity.  SI ¶ 32.

## II.   LEGAL STANDARD

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  Like other pretrial motions, motions *in limine* are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).  Accordingly, "a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (explaining that a court may rule in limine "pursuant to the district court's inherent authority to manage the course of trials").

In many instances, however, rulings "should be deferred until trial, so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016).  For example, in order to exclude evidence on a motion *in limine*, "the evidence must be inadmissible on all potential

United States District Court
Northern District of California

United States District Court
Northern District of California

grounds." *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014). Thus, denial of a motion *in limine* to exclude certain evidence does not mean that all evidence contemplated by the motion will be admitted, only that the court is unable to make a comprehensive ruling in advance of trial. *Id.* at 1168. Moreover, even if a district court does rule *in limine*, the court may "change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." *City of Pomona*, 866 F.3d at 1070; *see also Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial.").

### A. Federal Rule of Evidence 401

Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." "Relevancy simply requires that the evidence logically advance a material aspect of the party's case." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (internal quotations omitted).

### B. Federal Rule of Evidence 403

Even if evidence is relevant, it must be excluded if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Unfair prejudice can result from evidence that makes it more likely for a juror "to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves." *United States v. Sine*, 493 F.3d 1021, 1033 (9th Cir. 1992).

### C. Federal Rule of Evidence 802

Hearsay evidence is inadmissible unless provided for under a federal statute, the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court." Fed. R. Evid. 802. Hearsay

Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*

4

1   is a statement "the declarant does not make while testifying at the current trial or hearing" and

2   which "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed.

3   R. Evid. 801. "Hearsay within hearsay" is only admissible "if each part of the combined

4   statements conforms with an exception to the rule." Fed. R. Evid. 805.

### III.   THE GOVERNMENT'S MOTIONS *IN LIMINE*

#### A.   The Government's MIL to Preclude Defendant from Offering Evidence of Any Legitimate Medical Billing or Other Good Conduct as a Defense to the Charges in the SI

The Government argues that Defendant should be precluded from arguing, eliciting on direct or cross examination, or offering any evidence at trial of specific acts of good conduct, including evidence of: (1) legitimate billing and (2) the provision of legitimate services. Govt. MIL at 8. The Government contends that this evidence is irrelevant to Defendant's alleged health care and securities fraud schemes, and argues that if the evidence is admitted, it will confuse and mislead the jury. In the Government's view, admission of this evidence would also violate Federal Rule of Evidence 404 because it constitutes inadmissible character evidence.

Defendant argues that he should be permitted to introduce evidence of specific acts of good conduct, namely that certain claims submitted for reimbursement by Arrayit were valid and legitimate. Def. Opp. at 3. Defendant maintains that this evidence is relevant to show that he did not intend to commit the charged offenses. Specifically, Defendant contends that "evidence that claims were submitted . . . in a manner contrary to the government's theory of conspiracy and fraud is highly relevant to the jury's determination of whether there was a criminal agreement at all, [and] whether [Defendant] became a knowing and willful member with the intent to further the conspiracy or knew the unlawfulness of the health care fraud or had the request intent for the health care fraud or [the] intent [] to defraud." *Id.*

A defendant cannot establish "his innocence of crime by showing that he did not commit similar crimes on other occasions." *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955); *United States v. Glazer*, 850 F. App'x *see also United States v. Lara*, 2018 WL 1225204, at *1 (E.D. Cal. Mar. 9, 2018); *United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) ("For the

1  same reason that prior 'bad acts' may not be used to show a predisposition to commit crimes, prior

2  'good acts' generally may not be used to show a predisposition not to commit crimes."); *United*

3  *States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990) (excluding defendant from offering evidence

4  of legitimate billings in a false claims act case because it was irrelevant that the defendant "did not

5  overcharge in every instance in which she had the opportunity to do so").

6      Pursuant to *Herzog*, this Court concludes that evidence of legitimate billing or other good

7  conduct is irrelevant to Defendant's intent and is impermissible character evidence.  For example,

8  in a comparable case, *Glazer*, the defendant was charged with conspiracy to commit health care

9  fraud and for submitting fraudulent billings to Medicare.  850 F. App'x at 491.  The defendant

10  sought to introduce evidence of legitimate medical services, arguing that this evidence was

11  relevant to demonstrating his "state of mind, specifically, his lack of criminal intent, lack of intent

12  to enter a conspiracy, and lack of intent to commit a fraud."  Def.'s Opposition to the

13  Government's Motion Excluding Argument and Evidence that Medicare was Negligent, *United*

14  *States v. Glazer*, No. 2:14-cr-00329-ODW, ECF No. 281 at 2 (C.D. Cal. Apr. 22, 2019).  The

15  district court excluded this evidence, and the Ninth Circuit affirmed, reasoning that "[t]he district

16  court did not abuse its discretion by excluding evidence of 'legitimate' medical services outside of

17  the counts in the indictment, because '[a] defendant cannot establish his innocence of a crime by

18  showing that he did not commit similar crimes on other occasions.'"  *Glazer*, 850 F. App'x at 492

19  (citing *Herzog*, 226 F.2d at 565).

20      Like the defendant in *Glazer*, Defendant argues that he should be permitted to present

21  evidence of legitimate billings to demonstrate the absence of *mens rea*.  Def. Opp. at 3.

22  Problematically, this argument can be reduced to an argument routinely rejected by the Ninth

23  Circuit—a defendant may not demonstrate innocence by pointing to other occasions where he did

24  not commit the offense(s) charged.  Both *Herzog* and *Glazer* establish that Defendant's prior,

25  legitimate billing is irrelevant to the charged conduct.  *See United States v. Ellisor*, 522 F.3d 1255,

26  1270 (11th Cir. 2008) ("The fact that Ellisor purportedly produced other shows does not bear on

27

28  Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*
6

1   his intent to defraud with respect to the Christmas show, and is therefore irrelevant.").[2]

2   Based on the foregoing, the Court **GRANTS** the Government's motion to preclude

3   Defendant from offering evidence of any legitimate medical billing or other good conduct as a

4   defense to the charges in the SI. This ruling, however, does not preclude Defendant from

5   introducing evidence not barred by *Herzog*.

6   ### B. The Government's MIL to Preclude Defendant from Blaming Medicare or Other Insurance Providers for his Fraud

7

8   The Government argues that Defendant should be precluded from making any argument

9   that he did not defraud Medicare and other insurance providers because those providers did not

10   detect fraud and reimbursed Defendant's claims. That is, the Government contends that

11   Defendant should not be able to shift his culpability to the victims of his fraud by pointing to those

12   victims' potential negligence. Govt. MIL at 10.

13   The Ninth Circuit has held that evidence of a victim's alleged negligence is not relevant

14   and is properly excluded at trial. *See United States v. Lindsey*, 850 F.3d 1009, 1015 (9th Cir.

15   2017). Unlike common law fraud, reliance upon the defendant's misrepresentations has no place

16   in criminal fraud cases. *Neder v. United States*, 527 U.S. 1, 25 (1999). Further, it is irrelevant

17   whether "only the most gullible would have been deceived by the defendants' scheme." *United*

18   *States v. Hanley*, 190 F.3d 1017, 1023 (9th Cir. 1999). However, evidence of the circumstances

19   surrounding a victim's entanglement in the fraudulent scheme may be admissible for other

20   purposes. Indeed, documents and other information available to the parties can be useful for

21   determining materiality. *United States v. Bogucki*, 2019 WL 1024959, at *4 (N.D. Cal. Mar. 4,

22   2019). Relatedly, a victim's knowledge of the fraud could serve as relevant impeachment

23   evidence. *United States v. Yang*, 2019 WL 5536213, at *3 (N.D. Cal. Oct. 25, 2019).

24

25

26   ────────────────

27   [2] While Defendant does not seek to introduce evidence of prior legitimate billing under Rule 404, the Court notes that specific acts of good character are inadmissible under both Rule 405(b) and Rule 404(b) to prove that a defendant acted in conformity therewith.

28   Case No.: 5:20-cr-00425-EJD-1
    ORDER RE MOTIONS *IN LIMINE*

United States District Court
Northern District of California

United States District Court
Northern District of California

1

Defendant argues that the insurance providers' approval of claims is relevant because it

2

tends to disprove the Government's theory that most of Arrayit's claims were not medically

3

necessary and were thus fraudulent.  According to Defendant, the fact that "insurers reviewed and

4

approved claims, presumably having found the claims submitted by the treating physicians

5

justified the testing . . . is thus highly relevant to the jury's determination of whether there was any

6

alleged criminal conspiracy or healthcare fraud scheme."  Def. Opp. at 5.  Likewise, Defendant

7

argues this evidence is relevant because it tends to disprove the *mens rea* elements of the charged

8

offenses.

9

The Government agrees that evidence that insurers reviewed, approved, and paid claims is

10

relevant.  However, the Government argues that any attempt by Defendant to argue that he was

11

unaware that his billings were fraudulent because the insurers continued to accept and pay for his

12

billings is an unacceptable repackaged "blame the victim" argument.  Govt. Reply at 4.  In

13

support, the Government cites to *United States v. Ahmed*, 2016 WL 8732355, at *3 (E.D.N.Y.

14

June 24, 2016).  There, the defendant argued that he believed his claims were proper because

15

Medicare continued to pay his claims without alerting him that it believed his claims to be

16

improper.  *Id.*  In other words, the defendant asserted that Medicare was negligent in handling his

17

claims, which led him to believe his claims were proper, and this innocent belief evidenced a lack

18

of criminal intent.  The court rejected this argument, reasoning that it was "nothing more than a

19

repackaged version of the argument . . . prohibited by the [blame the victim] cases."  *Id.*

20

The Court agrees with the logic of *Ahmed*, which is supported by the fundamental legal

21

tenant that ignorance of the law is not an excuse.  By arguing that he lacked the requisite intent

22

because the insurance companies continued to reimburse submitted claims, Defendant attempts to

23

shift blame onto the victims of his alleged scheme in violation of *Lindsey*.  Because a victim's

24

negligence is not a defense, it must be the case that a victim's failure to discover a fraudulent

25

scheme is not a defense.  These two principles go together.  *See United States v. Amico*, 486 F.3d

26

764, 780 (2d Cir. 2007) ("[A] victim's lack of sophistication is not relevant to the intent element

27

of mail or wire fraud.").

28

Case No.: 5:20-cr-00425-EJD
ORDER RE MOTIONS *IN LIMINE*

United States District Court
Northern District of California

Based on the foregoing, the Court **GRANTS** the Government's motion to preclude Defendant from blaming Medicare of other insurance providers for his fraud, subject to the limitation that evidence of the circumstances surrounding a victim's entanglement in the fraudulent scheme may be admissible for other purposes, such as materiality and impeachment.

### C.  The Government's MIL to Introduce Statements of the Defendant's Co-Conspirators

The Government moves to admit statements of the Defendant's co-conspirators pursuant to Federal Rule of Evidence 801(d)(2)(E).  Govt. MIL at 11.

The Federal Rules of Evidence define hearsay as: "(A) statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Federal Rule of Evidence 801(d)(2)(E) excludes from the hearsay definition (and thus the rule against hearsay) statements offered against an opposing party and (E) made by the party's coconspirator during and in furtherance of the conspiracy.  For a statement to be admissible under Federal Rule of Evidence 801(d)(2)(E) (the coconspirator exception), the Government must prove the existence of a conspiracy at the time the statement was made.  *See United States v. Larson*, 460 F.3d 1200, 1212 (9th Cir. 2006), *adopted in relevant part on reh'g en banc*, 495 F.3d 1094, 1096 n.4 (9th Cir. 2007).

Under the rule, a jury can consider the truth of the co-conspirator's out-of-court statement when: (1) a conspiracy existed at the time of the statement; (2) the member of the conspiracy against whom the statement is introduced had knowledge of, and participated in, the conspiracy; and (3) the statement was made in furtherance of the conspiracy.  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  To be "in furtherance" of, a scheme must advance a common objective of the scheme or set in motion a transaction that is an integral part of the scheme.  *United States v. Yarborough*, 852 F.2d 1522, 1535–36 (9th Cir. 1988).  The Ninth Circuit has found the following statements to be made in furtherance of a joint venture: (1) statements made to induce enlistment or further participation in the group's activities; (2) statements made to prompt further action on the part of the conspirators; (3) statements made to reassure members of a conspiracy's continued

1   existence; (4) statements to allay a co-conspirator's fears; and (5) statements made to keep co-

2   conspirators abreast of an ongoing conspiracy's activities.  *Id.*

3        The Government asks the Court to infer, under Rule 104(a), the existence of a conspiracy

4   because certain co-conspirators in this case have pleaded guilty and have admitted their

5   participation in the alleged conspiracy to defraud health care programs and the alleged conspiracy

6   to pay and receive kickbacks.  Govt. MIL at 13.  The Court agrees with Defendant that it is

7   premature to predetermine the admissibility of co-conspirator statements based upon the guilty

8   pleas of four cooperating defendants.  Indeed, the Government has neither identified the

9   coconspirators or their statements nor established by a preponderance of the evidence that

10  Defendant participated in the conspiracies as required to admit the alleged coconspirator

11  statements against him.  Thus, the alleged coconspirator statements are not admissible unless and

12  until the Government sequences its presentation of evidence in such a way that it first establishes

13  by a preponderance of evidence that Defendant "had knowledge of, and participated in" the

14  charged conspiracies.  Based on the foregoing, the Court **DEFERS** ruling on this motion until the

15  Government attempts to use Rule 801(d)(2)(E) to admit co-conspirator statements.  *See United*

16  *States v. Long*, 706 F.2d 1044, 1053 (9th Cir. 1983) ("This court has determined that the decision

17  to grant a pretrial hearing [to determine the admissibility of coconspirators' statements] is within

18  the discretion of the trial court.").

19       **D.   The Government's MIL to Preclude Defendant from Referencing**
20            **Punishment to the Jury**

21       The Government moves to preclude as irrelevant and prejudicial any reference by the

22  defense to Defendant's potential punishment during any trial stage, *i.e.*, during jury selection,

23  opening statements, examination of witnesses, including Defendant if he chooses to testify, and

24  summation.  Govt. MIL at 13.  The Government seeks to preclude both overt and subtle references

25  to punishment.  Overt references include statements like, "You understand the defendant is facing

26  a potential life prison term if convicted," while subtle references include statements like, "the

27  defendant is facing a lot of time," "this case has serious consequences for the defendant," "the

28  Case No.: 5:20-cr-00425-EJD-1
    ORDER RE MOTIONS *IN LIMINE*

United States District Court
Northern District of California

10

defendant's liberty is at stake in this trial," and "your decision will have consequences for a long time to come." *Id.*

Defendant agrees that it would be inappropriate for him to reference any potential imprisonment before the jury.  However, Defendant argues that the Government's request is overbroad as it seeks to prevent Defendant from making permissible references about the seriousness of the trial and the impact that it will have on Defendant.  Def. Opp. at 7.

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992).  Any commentary to the jury on a defendant's potential penalty or punishment "draw[s] the attention of the jury away from their chief function as the sole judges of the facts, opens the doors to compromise verdicts, and confuses the issues to be decided." *United States v. Olano*, 62 F.3d 1180, 1202 (9th Cir. 1995).  However, "[s]ubtle references . . . are not really referencing punishment." *United States v. Williams*, 2017 WL 4310712, at *8 (N.D. Cal. Sept. 28, 2017).

The Court will allow the defense to make subtle references like, "this case has serious consequences for the defendant," and will also allow the defense to remind the jury of their duties and their responsibility of holding the government to their burden of proof.  Such references do not reference punishment, but instead remind the jury of the seriousness of its duty to consider the evidence fairly and objectively.  *See id.*  Moreover, Defendant must be permitted to reference the punishment of cooperating witnesses to impeach them.  *See United States v. Larson*, 495 F.3d 1094, 1105 (9th Cir. 2007) ("[W]hile the Government has an interest in preventing a jury from inferring a defendant's potential sentence, any such interest is outweighed by a defendant's right to explore the bias of a cooperating witness who is facing a mandatory life sentence."); *see also United States v. Lo*, 231 F.3d 471, 482 (9th Cir. 2000) ("The Supreme Court has emphasized the policy favoring expansive witness cross-examination in criminal trials.  Similarly, this Court has observed that full disclosure of all relevant information concerning adverse witnesses' past record and activities through cross-examination and otherwise is indisputably in the interests of justice." (cleaned up) (citations omitted)).  However, overt references to punishment are not permissible.

Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*

United States District Court
Northern District of California

1    Based on the foregoing, the Court **GRANTS in part** the Government's motion to preclude

2    Defendant from referencing punishment to the jury.

3                    **E.  The Government's MIL to Exclude Any Out-of-Court Statements Made by
                         the Defendant if Offered to Prove the Truth of the Matter Asserted**
4

5             The Government moves to exclude any out-of-court statements made by Defendant and

6    offered by Defendant to prove the truth of the matter asserted in the statements.  The Government

7    intends to introduce Defendant's inculpatory statements under Federal Rule of Evidence

8    801(d)(2).  Self-inculpatory statements, when offered by the Government, are admissions by a

9    party-opponent and are therefore not hearsay but remain inadmissible hearsay when offered by the

10   speaker of the inculpatory statements.  *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir.

11   2000).  It is well-settled that a defendant may not place her "exculpatory statements before the jury

12   without subjecting [herself] to cross-examination."  *Id.*

13            Defendant agrees that he cannot admit his own out-of-court statements to prove their truth.

14   However, he argues that the Government's blanket prohibition on the introduction of any of his

15   out-of-court statements is contrary to the Federal Rule of Evidence and Defendant's constitutional

16   rights.

17            First, Defendant is correct that he may introduce his own statements for a non-hearsay

18   purpose—*i.e.*, not for the statement's truth, but for effect on the listener, the fact that the statement

19   was said, or for a *mens rea* purpose.

20            Second, Defendant is correct that Federal Rule of Evidence 106, the Rule of Completeness,

21   could apply.  Rule 106 provides:

22                    When a writing or recorded statement or part thereof is introduced by
                      a party, an adverse party may require the introduction at that time of
23                    any other part or any other writing or recorded statement which ought
                      in fairness to be considered contemporaneously with it.
24

25            Federal Rule of Evidence 611(a) grants "district courts the same authority regarding oral

26   statements which [Rule] 106 grants regarding written and recorded statements."  *United States v.*

27   *Collicott*, 92 F.3d 973, 983 n.12 (9th Cir. 1996) (alteration in original) (quoting *United States v.*

28   Case No.: 5:20-cr-00425-EJD-1
     ORDER RE MOTIONS *IN LIMINE*

United States District Court
Northern District of California

12

*Li*, 55 F.3d 325, 329 (7th Cir. 1995)).  Indeed, the Ninth Circuit has entertained arguments about the potential for defendants to admit their own out-of-court statements to correct a misleading impression based upon the selective admission of a defendant's out-of-court statements.  *See United States v. Liera-Morales*, 759 F.3d 1105, 1111 (9th Cir. 2014) (extending Rule 106 to oral statements but finding that the district court did not err in rejecting the defendant's statements because the court "carefully and thoroughly considered the government's proffered statements from the post-arrest interview and correctly determined the statements were neither misleading nor taken out of context"); *United States v. Demint*, 661 F. App'x 484, 489 (9th Cir. 2016) (considering argument by the defendant that she should have been permitted to elicit additional testimony about *her* out-of-court statements under the Rule of Completeness).  While the Government is correct that in these cases the Ninth Circuit ultimately ruled that the Rule of Completeness did not require the admission of additional testimony, this misunderstands the current inquiry, which is whether the Rule of Completeness *might* require admission of Defendant proffered self-admissions.  Under the relevant case law, the answer is undoubtedly yes.  Thus, the Court cannot issue a blanket ruling prohibiting Defendant from introducing self-admissions.  To do so would be contrary to established law.  Based on the foregoing, the Court **DEFERS** ruling on this motion until the Government attempts to use Rule 801(d)(2) to admit Defendant's out-of-court, inculpatory statements.

### F. The Government's MIL to Preclude the Use of Law Enforcement Agent Interview Reports or Rough Notes for Impeachment of Government Witnesses

The Government moves to preclude defense counsel from using law enforcement agent interview reports or rough notes to cross-examine or impeachment government witnesses.  The Government argues that interview reports do not qualify as statements covered by the Jencks Act unless they have been signed or adopted by the witnesses who were interviewed.

The Jencks Act, 18 U.S.C. § 3500 requires that, upon a defendant's request, the government produce prior statements of testifying government witnesses that relate to their testimony.  The Act defines "statement" to include "(1) a written statement made by said witness

and signed or otherwise adopted or approved by him."  18 U.S.C. § 3500(e).

Defendant agrees that witnesses interview reports are not Jencks material of the interviewed witness absent the conditions specified in 18 U.S.C. § 3500(e).  However, Defendant argues that reports authored by federal agents are the Jencks material of that authoring agent and thus can be used for cross examination of the preparing agent.  Def. Opp. at 11 ("[T]o the extent that the government calls as a witness an agent who authored an interview report about an interview that the agent conducted as part of their work on the case, and that interview report has been signed or approved by the agent . . . , the interview report is Jencks material of the agent and may be fully used to examine any agent who authored such reports.").  The Government seemingly agrees with this position.  Nonetheless, the Government seeks an order from the Court preventing Defendant from "improperly cross-examin[ing] other witnesses."  Govt. Reply at 8.  It is premature to issue such an order.  If, during cross examination, the Government believes Defendant is violating the parameters of *Palermo v. United States*, 360 U.S. 343 (1959), the Government may object at trial.  Based on the foregoing, the Court **DEFERS** ruling on this motion.

### G. The Government's MIL to Preclude the Defendant from Making any Argument that Encourages Jurors to Ignore the Law, not Follow the Court's Instructions, or Otherwise Violate Their Oaths as Jurors

The Government moves to preclude Defendant from arguing or seeking to admit evidence for the purposes of encouraging the jury to nullify its verdict.  Jury nullification is "a violation of a juror's oath to apply the law as instructed by the court."  *United States v. Lynch*, 903 F.3d 1061, 1079 (9th Cir. 2018) (quotation marks and citation omitted).  The Ninth Circuit has made clear that "no juror has the right to engage in nullification" and courts have a "duty to forestall or prevent such conduct."  *Merced v. McGrath*, 426 F.3d 1076, 1079–80 (9th Cir. 2005) (quotation marks and citation omitted).  Defendant does not disagree and has no intention to argue for nullification.  Def. Opp. at 12 ("To the contrary, [Defendant] intends to argue that the jury should scrupulously follow all of the Court's instructions . . . .").  Because the Parties agree that argument regarding jury nullification is inappropriate, the Court **GRANTS** the Government's motion to

Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*
14

1    prohibit Defendant from making arguments encouraging nullification.

### H.  The Government's MIL to Prohibit the Defendant from Presenting Evidence that Other Individuals or Entities Should Have Been Charged

The Government moves to prohibit Defendant from presenting evidence that other individuals or entities should have been charged in a manner comparable to Defendant.  Defendant argues that a blanket prohibition is improper.

"The law is well settled that government charging decisions and motivations for such decisions is an issue for the court to resolve before trial; it is not a proper consideration for the jury."  *United States v. Ellis*, 2020 WL 1676772, at *1 (D. Nev. Apr. 6, 2020).  The Ninth Circuit explained in *United States v. Montoya* that "[o]utrageous government conduct is not a defense, but rather a claim that government conduct in securing an indictment was so shocking to due process values that the indictment must be dismissed."  45 F.3d 1286, 1300 (9th Cir. 1995) (collecting cases).

While the Court appreciates the logic of *Ellis*, the Court must note that it does not address the situation presented here, which is whether a defendant can reference prosecutorial threats and charging decisions to demonstrate a witness's potential bias.  It is a fundamental rule of evidence that a defendant be able to test the boundaries of a witness's memory, bias, and trustworthiness, and that evidence bearing on a witness's personal or pecuniary interests is relevant.  The cases cited by the Government are thus inapposite.  Each addresses a situation where the defendant attempted to use prosecutorial discretion as a defense.  That is, a defendant claimed innocence based on the government's decision to *not* charge a co-conspirator.  Such a defense is clearly barred.  But the same defendant could demonstrate bias of a witness by pointing out that the witness *could have been* charged but was not or that the witness is testifying a specific way because of government pressure.  Indeed, if a proper foundation is laid, Defendant may impeach a witness or demonstrate a witness's bias by pointing out that the witness is testifying in a way that inures to the government to not face future prosecution.  *Cf. United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir. 1995) ("Outrageous government conduct is not a *defense*, but rather a claim

Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*

United States District Court
Northern District of California

United States District Court
Northern District of California

1  that government conduct in securing an indictment was so shocking to due process values that the

2  indictment must be dismissed." (emphasis added)); *United States v. Larch*, 399 F. App'x 50, 55–

3  56 (6th Cir. 2010) (explaining that guilt of another does not excuse a defendant from liability for

4  his actions).  Based on the foregoing, the Court **GRANTS** the Government's motion to prohibit

5  Defendant from introducing the Government's charging decisions to demonstrate prosecutorial

6  misconduct.  However, Defendant may use the Government's charging decisions to establish

7  witness bias.

8       IV.    **DEFENDANT'S MOTIONS *IN LIMINE***

9           A.  **Defendant's MIL No. 1 to Exclude Evidence and Preclude Statements of
10              the SEC's Investigation and Civil Prosecution of Arrayit Corp. and its
                Officers**

11          On November 12, 2020, the Government charged Defendant with several counts relating to

12  an alleged healthcare fraud conspiracy and several counts of securities fraud.  *See* Dkt. No. 32.

13  The Government's charges arose out of a parallel investigation of Defendant and Arrayit by the

14  U.S. Securities and Exchange Commission ("SEC"), the Department of Justice, the Department of

15  Veteran Affairs, and the U.S. Postal Service.  As part of this investigation, on April 13, 2020, the

16  SEC temporarily suspended trading shares of Arrayit's stock for a 10-day period because of

17  questions regarding the accuracy and adequacy of publicly available information concerning

18  Arrayit's financial condition and its COVID-19 blood test.  This suspension lasted from April 14,

19  2020, to April 27, 2020.  *See* Dkt. No. 1; *see also In the Matter of Arrayit Corporation*, File No.

20  500-1.  After the filing of a criminal complaint against Defendant, the SEC filed a civil

21  enforcement action against Defendant.  Thereafter, in April 2021, the SEC filed a civil complaint

22  against Arrayit and Rene Schena, the CEO of Arrayit and Defendant's wife.  The gravamen of the

23  SEC complaints is that Arrayit and the Schenas (Defendant and his wife), as officers of Arrayit,

24  failed to file certain statements with the SEC, made false or misleading statements about the status

25  of filing Arrayit's financial statements, and made false or misleading statements about Arrayit's

26  COVID-19 test.  The SEC case against Defendant remains stayed, but the cases against Mrs.

27  Schena and Arrayit have resolved through consent judgments.  Defendant moves to preclude the

28

introduction of any evidence pertaining to the SEC's investigation and civil actions of Arrayit and

its officers, including the resolution of the actions with Arrayit and Mrs. Schena.  Defendant

further moves to preclude the introduction of facts that the SEC temporarily suspended trading of

Arrayit in April 2020.  Defendant argues this evidence is irrelevant, unduly prejudicial, and/or

inadmissible hearsay.

In its opposition, the Government indicates that it does not intend to introduce evidence of

the SEC's complaint or settlement with Arrayit and Mrs. Schena in its case in chief.  The

Government may introduce this evidence for impeachment purposes.  The Government also states

that it does not expect to introduce the SEC Order of Suspension of Trading into evidence, but that

if it did, it would be offered for a relevant, non-hearsay purpose, like context, intent, or effect on

Defendant and his co-conspirators.  Govt. Opp. at 4.

In his reply, Defendant continues to dispute the relevance of the evidence, arguing that the

suspension is irrelevant and prejudicial.  Because the Government does not intend to offer

evidence about the SEC's investigations or suspension, the Court **DEFERS** ruling on this motion

unless and until the Government attempts to introduce such evidence.  However, the Court notes

that evidence about the suspension or the SEC Order of Suspension itself likely is relevant for

both notice, evidence of a common plan, and to demonstrate share price movement.

### B.  Defendant's MIL No. 2 to Exclude Evidence and Preclude Statements Relating to Uncharged Conduct Alleged in SI

Defendant moves pursuant to Federal Rules of Evidence 401 through 403 to exclude

evidence and mention of:

- Defendant's failure "to provide investors and the SEC with accurate financial statements and reports of Arrayit's financial condition;"

- Defendant's concealment of "Arrayit's financial condition" through his false promises that "the public release of Arrayit's financial statements was imminent;"

- The "false and misleading statements" made by Defendant to "investors about Arrayit's plans to list on the NASDAQ stock exchange;" and

Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*
17

United States District Court
Northern District of California

- Defendant's manipulation of "Arrayit stock through stock transfers and trading activity" and through his concealment of "securities transactions made in furtherance of this scheme."

These allegations appear in paragraph 31 of the SI. Defendant argues that these "introductory allegations" should be excluded because they "feature nowhere in the actual charges that the Government" brings. He argues that these four categories of evidence should thus be excluded as irrelevant and unduly prejudicial. Def. MIL No. 2 at 3.

Counts Seven through Nine of the SI charge Defendant with securities fraud, in violation of 15 U.S.C. §§ 78j & 78ff; 17 C.F.R. 240.10b-5. These counts charge Defendant with executing a scheme to defraud investors by "deceiving purchasers and sellers of Arrayit's securities, and the market at-large, about the performance of Arrayit's business, Arrayit's financial condition, the nature and composition of Arrayit's products, Arrayit's sales, revenues, and expenses, and Arrayit's prospect for growth" beginning in or around 2015 and continuing through in or around 2020. SI ¶ 29, 60. As alleged in the SI, the purposes of this scheme were to promote Arrayit and Defendant online, to enrich Defendant, and to artificially inflate and maintain the share price of Arrayit securities to make Arrayit attractive to potential purchasers. SI ¶ 30. The SI alleges nine manner and means used to accomplish the scheme to defraud investors:

a. Failing to provide investors and the SEC with accurate financial statements and reports of Arrayit's financial condition;

b. Concealing Arrayit's financial condition by falsely promising that the public release of Arrayit's financial statements was imminent;

c. Making false and misleading statements to investors about the performance of Arrayit's business, Arrayit's financial condition, the nature and composition of Arrayit's products, Arrayit's sales, revenues, and expenses, and Arrayit's prospects for growth;

d. Making false and misleading statements to investors about the proliferation of Arrayit's proprietary allergy testing, and about "deals" and other agreements to spread Arrayit's proprietary allergy testing;

e. Making false and misleading statements to investors about Arrayit's plans to list on the NASDAQ stock exchange;

f. Making false and misleading statements to investors about Arrayit's capability to test for COVID-19, the accuracy of Arrayit's COVID-19 test, the status of its regulatory approval,

Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*
18

and the proliferation of Arrayit's COVID-19 testing technology;

g.  Manipulating the price of Arrayit stock through stock transfers and trading activity, and concealing securities transactions made in furtherance of the scheme;

h.  Conspiring to defraud Medicare, Medicaid, TRICARE, and the Commercial Insurers, as discussed in greater detail in paragraphs 36 through 49; and

i.  Concealing from investors, through false and misleading statements and omissions of material fact, Arrayit's scheme to defraud Medicare, Medicaid, TRICARE, and the Commercial Insurers, and to illegally profit from the proceeds of illegal health care kickbacks and bribes.

SI ¶ 31.  The Government argues that three specific false and misleading statements serve as "executions of the scheme and the basis for Counts Seven through Nine of the Superseding Indictment."  Govt. Opp. No. 2 at 3.  These statements are (1) a November 19, 2018, press release about "an allergy testing agreement with a multibillion-dollar company in Palo Alto, California" (Count Seven); (2) an August 8, 2019, tweet about a "$240,000,000 test kit manufacturing run" (Count Eight); and (3) March 19, 2020 "emails to investors about demand for Arrayit's COVID-19 tests and coordination with government agencies" (Count Nine).

"[T]o convict a defendant for securities fraud under 15 U.S.C. § 78j(b), 15 U.S.C. § 78ff and 17 C.F.R. § 240.10b–5 (Rule 10b–5), the government must prove that the defendant: (1) willfully and knowingly; (2) employed any device, scheme or artifice to defraud, or made any untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or engaged in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person; (3) in connection with the purchase or sale of any security; (4) by using or employing any means or instrumentality of interstate commerce, the mails, or any facility of any national securities exchange."  *Gutstein v. United States*, 86 F.3d 1162 (9th Cir. 1996).  However, to demonstrate that a defendant employed a "device, scheme or artifice" or made a material misstatement or mission, the Government "'is not restricted solely to isolated misrepresentations or omissions.'"  *United States v. Ellison*, 704 F. App'x 616, 619 (9th Cir. 2017) (quoting *Blackie*

1    *v. Barrack*, 524 F.2d 891, 903 n.19 (9th Cir. 1975)).  Indeed, the Ninth Circuit has held that

2    evidence of other transactions is "generally admissible" to prove the existence of a scheme to

3    defraud.  *United States v. Harris*, 842 F. App'x 28, 30 (9th Cir. 2020) ("Generally, evidence of

4    uncharged transaction is admissible to prove [the existence of a scheme to defraud]." (citing

5    *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013)); *see also United States v. Loftis*, 843

6    F.3d 1173, 1177 (9th Cir. 2016) (holding that uncharged transactions are admissible as part of "the

7    fraudulent scheme as a "whole" because "Rule 404(b) applies to evidence of 'other' acts, not to

8    evidence of the very acts charged as crimes in the indictment").

9        The Government must prove that Defendant willfully and knowingly employed a scheme

10   to defraud investors.  It may accomplish this either by presenting evidence about the specific

11   misrepresentations identified in Counts Seven through Nine or by presenting evidence that bears

12   on the alleged larger scheme to defraud.  Contrary to Defendant's reading of the SI, the alleged

13   securities fraud scheme charged in Counts Seven through Nine is not confined to specific

14   misrepresentations made about Arrayit stock, but instead includes allegations about behaviors

15   taken by Defendant to promote Arrayit's stock, *i.e.*, the manner and means alleged in paragraph 31

16   of the SI.  The "manner and means" charged in the SI are indicative of and relevant to the larger

17   securities scheme as they demonstrate how Defendant executed the scheme and combined form

18   one coherent scheme.  Thus, Defendant's acts of disseminating false and misleading information

19   about Arrayit to conceal Arrayit's true financial condition bear on and are intertwined with the

20   specific acts charged in Counts Seven through Nine.  There is little distinction between the four

21   categories of evidence sought to be precluded by Defendant and the statements identified in

22   Counts Seven through Nine.  *Accord United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir.

23   2004) (stating that uncharged conduct is admissible as it "constitutes a part of the transaction that

24   serves as the basis for the criminal charge").

25        Finally, Rule 403 does not prohibit the admission of the evidence.  The evidence the

26   Government anticipates it will introduce is highly probative of a specific element of the charged

27   offense, namely Defendant's alleged scheme to defraud.  The information is not prejudicial as it

28   Case No.: 5:20-cr-00425-EJD-1
     ORDER RE MOTIONS *IN LIMINE*
     20

United States District Court
Northern District of California

1    speaks to the very conduct with which Defendant is charged and does not otherwise inflame one's

2    passions.  Further, the presentation of this evidence will not create a mini-trial or a waste of time.

3    Of course, the Government must establish a nexus between the allegations of fraud and the

4    evidence it seeks to introduce.  Pursuant to the Government's papers, the Court finds that the

5    evidence identified by the Government meets that burden.  Based on the foregoing, the Court

6    **DENIES** Defendant's motion to exclude evidence and preclude statements relating to the

7    uncharged conduct alleged in the SI.

8              **C.  Defendant's MIL No. 3 to Exclude Evidence and Preclude Statements re**
              **Arrayit's COVID-19 Test**
9

10         Pursuant to Federal Rules of Evidence 401 through 403, Defendant moves to exclude

11   evidence and preclude mention at trial that Arrayit did not have a functional COVID-19 test in

12   March 2020.  Defendant argues that the Government has not charged him with making false

13   statements regarding whether Arrayit had a COVID-19 test.  Instead, the Government alleges that

14   Defendant misstated the demand for the test and Arrayit's connections with federal and state

15   health agencies in a series of emails to investors in March 2020.  Thus, in Defendant's view, any

16   evidence about Arrayit never having a COVID-19 test is irrelevant and unduly prejudicial.  Def.

17   MIL No. 3 at 3.

18         The SI alleges that on or around March 19, 2020, and March 21, 2020, Defendant sent an

19   email to dozens of investors who had inquired about the COVID-19 test.  That email said:

20                   Dear Valued Customer, We received more than 50,000 requests for
                    our finger stick blood test for SARS-CoV-2, the virus that causes
21                   coronavirus disease 2019 (COVID-19).  Our team is coordinating
                    with local, state and federal agencies and with our distributors to make
22                   this test available to as many patients as possible on an expedited
                    timeline.  Please consult our website and press releases for updates.
23                   Best Regards, Arrayit Corporation

24   SI ¶ 32(d).  Count Nine of the SI charges Defendant with an execution of the scheme to defraud

25   investors in connection with this email.  The Government alleges that Defendant falsely described

26   the demand for Arrayit's COVID-19 tests and its coordination with government agencies.  SI ¶ 60.

27   Earlier in the SI, the Government alleges that part of Defendant's scheme to defraud investors

28   Case No.: 5:20-cr-00425-EJD-1
     ORDER RE MOTIONS *IN LIMINE*
                                          21

United States District Court
Northern District of California

United States District Court
Northern District of California

1  included "[m]aking false and misleading statements to investors about Arrayit's *capability to test*

2  for COVID-19, the accuracy of Arrayit's COVID-19 test, the status of its regulatory approval, and

3  the proliferation of Arrayit's COVID-19 testing technology."  SI ¶ 31(f) (emphasis added).

4        Defendant seeks to preclude evidence regarding the existence and efficacy of Arrayit's

5  COVID-19 test and asserts that "[t]he Government has not alleged in the indictment that

6  [Defendant] made a false statement about the existence or efficacy of Arrayit's COVID-19 test."

7  Def. MIL No. 3 at 3.  The Court disagrees.  Contrary to Defendant's assertion, the SI alleges that

8  Defendant made false and misleading statements about "Arrayit's capability to test for COVID-

9  19" and about the "accuracy of Arrayit's COVID-19 test."  SI ¶ 31(f).  The SI thus makes clear

10  that the Government intends to probe whether Arrayit was even capable of testing for COVID-19.

11  *Cf. United States v. Neill*, 166 F.3d 943, 947 (9th Cir. 1999) ("The essential purpose of an

12  indictment is to give the defendant 'notice of the charge so that he can defend and plead his case

13  adequately.'" (quoting *United States v. James*, 980 F.2d 1314, 1316 (9th Cir. 1992)).

14        Further, evidence about whether Arrayit had developed a COVID-19 test at the time the

15  emails were sent is certainly relevant to whether the statements made in the emails were false.

16  Evidence that Arrayit neither had a finger stick blood test nor the capacity to test for COVID-19

17  bears on the general truth of the statements contained in the email.  *See* Govt. Opp. No. 3 at 3

18  (detailing the evidence that the Government possesses that demonstrates that Defendant knew at

19  the time the emails were sent that Arrayit lacked the capacity to test for COVID-19).

20        Finally Rule 403 does not change this analysis.  Evidence regarding the functionality of the

21  COVID-19 test is directly relevant to the charged conduct and is necessary to evaluate the falsity

22  of the statements contained in the emails.  Defendant argues that because of the ongoing

23  pandemic, evidence about whether Arrayit had an effective COVID-19 test will improperly

24  inflame the jury.  However, as alleged in the SI, Defendant attempted to capitalize on the

25  pandemic in March 2020.  He may not now use Rule 403 to shield himself from the repercussions

26  of that conduct.  *See Old Chief v. United States*, 519 U.S. 172, 193 (1997) (O'Connor, J.,

27  dissenting) ("Rule 403 does not permit the court to exclude the Government's evidence simply

28  Case No.: 5:20-cr-00425-EJD-1

ORDER RE MOTIONS *IN LIMINE*

United States District Court
Northern District of California

1  because it may hurt the defendant.").  Based on the foregoing, the Court **DENIES** Defendant's

2  motion to exclude evidence and preclude statements relating to the existence and efficacy of

3  Arrayit's COVID-19 test.

### D. Defendant's MIL No. 4 to Exclude Evidence and Preclude Statements Regarding CLIA Certification

Pursuant to Federal Rules of Evidence 401 through 403 and 801, Defendant moves to

exclude evidence and preclude mention at trial of alleged false statements regarding Arrayit's

Clinical Laboratory Improvement Amendments ("CLIA") certification.  Specifically, Defendant

moves to exclude evidence of (1) statements he made in Arrayit's lab certification application to

the College of American Pathologists ("CAP") and the California Department of Public Health

("CDPH") under the CLIA, and (2) the denial of that application.

### 1. Background

The Centers for Medicare & Medicaid Services ("CMS") regulates all laboratory testing,

except research, performed on humans in the United States.  CMS requires that clinical

laboratories both (1) be properly certified through CLIA and (2) obtain state licensure, such as a

California Clinical Laboratory License from CDPH.  While laboratories that meet certain

preliminary standards can obtain a CLIA Certificate of Registration and engage in testing before

they are inspected, laboratories also must provide CMS with proof of accreditation by an approved

accreditation program, like CAP, within eleven months of the certificate's issuance.  Pertinent

here, where a laboratory is performing a non-waived test, CLIA provides multiple forms of

certification, all of which allow the laboratory to perform the tests.  These three forms of

certification include: (1) Certificate of Registration ("COR"), which allows labs to perform non-

waived tests until the lab is inspected and determined to be in compliance with CLIA regulations;

(2) Certificate of Compliance ("COC"), which is for labs that have passed inspection, and (3)

Certificate of Accreditation ("COA"), which is awarded to facilities that perform non-waived tests

based on their accreditation by CLIA-approved organizations.

Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*

Personnel at clinical laboratories must possess certain qualifications to conduct laboratory testing. Specifically, the State of California requires testing personnel to be either a licensed physician, an individual licensed to direct a clinical laboratory, or an individual licensed to perform the testing. Laboratories that cannot meet these requirements cannot enroll with or submit claims for reimbursement to Medicare, Medicaid, TRICARE, and Commercial Insurers.

Defendant is charged with, among other things, healthcare fraud under 18 U.S.C. § 1347 and conspiracy under 18 U.S.C. § 1349. The SI alleges that Defendant used the following manner and means to execute the alleged scheme:

> 38. SCHENA and others would apply for and maintain various laboratory certifications from state and federal agencies, including from CLIA, that were necessary for Arrayit to legally conduct testing and submit claims to Medicare, Medicaid, TRICARE, and Commercial Insurers.

> 39. SCHENA and others would submit or cause the submission of false and fraudulent attestations and other documents to state and federal regulators, including CLIA, that falsely certified the identity, roles, and responsibilities of Arrayit's laboratory director and other personnel, and concealed SCHENA's roles and responsibilities.

The SI further alleges that Defendant executed a securities fraud scheme, in part, by "[c]onspiring to defraud Medicare, Medicaid, TRICARE, and the Commercial Insurers" and "[c]oncealing from investors, through false and misleading statements and omissions of material fact, Arrayit's scheme to defraud Medicare, Medicaid, TRICARE, and the Commercial Insurers." SI ¶¶ 30, 31(h) & (i).

According to the Government, the evidence at trial will show that in or around November 2016, Arrayit was notified by CDPH that it had received complaints that Arrayit was engaging in allergy testing without possessing a state license from CDPH or a CLIA certification. CPDH discovered that Defendant had made false and fraudulent statements that it was CLIA certified when it was not. After this investigation, CDPH denied Arrayit's application for a state license. CDPH informed Arrayit that one of the reasons for the denial was that Arrayit failed to satisfy numerous requirements regarding the roles and responsibilities for the role of a laboratory director. *See* C.F.R. 493.1445(e)(3)(ii), (4), (10, (11), (12), (13), & (15).

Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*

24

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Ultimately, Arrayit was able to obtain a CLIA COR.  *See* Govt. Opp. No. 4 at 4.  The SI

2    alleges that Defendant obtained this certification by making numerous false statements regarding

3    the roles and responsibilities of Dr. Taguchi and others at the laboratory and concealed his true

4    role.  SI ¶¶ 38, 39.  However, Arrayit still had to obtain proof of accreditation by CAP.  According

5    to the Government, the evidence at trial will show that Defendant was unable to satisfy the

6    requisite requirements.  In December 2019, CAP issued a report denying Arrayit's request after

7    determining that because the tests Arrayit performed were "complex," Defendant was required to

8    have a license under CLIA to load the assays as the lab manager (which he did not), and Arrayit

9    needed to have a lab manager that was on-site more frequently.  Arrayit disagreed and provided a

10   detailed response.  CAP rejected the application for reconsideration.  Defendant was advised that

11   CAP's determination to deny accreditation would lead to a revocation of its CLIA certification.

12   Defendant was also advised that any person who intentionally violates CLIA requirements was

13   subject to sanctions, including imprisonment.  Defendant did not disclose the revocation to

14   investors, despite having issued earlier public statements touting Arrayit's purported successes in

15   obtaining licensure and accreditation by CDPH, CLIA, and CAP.

16   Thereafter, Defendant submitted a new application for a CLIA COC.  The Government

17   maintains that this application contained similar false statements regarding the roles and

18   qualifications of laboratory personnel, and failed to address the deficiencies identified by CAP.

19   The application was granted in April 2020.  CDPH subsequently requested proof that Arrayit had

20   cured the deficiencies identified by CAP, but Arrayit failed to provide such documentation.

21                                    **2.  Analysis**

22   Evidence regarding Defendant's allegedly false statements regarding Arrayit's CLIA

23   application and the CAP report is both relevant and admissible.  As alleged in the SI, the

24   Government will show at trial that Defendant "executed a health care fraud by, among other

25   things, lying to state and federal regulators about the role of laboratory testing personnel, and

26   committed a securities fraud scheme by making false representations and material nondisclosures

27   about this same process."  Govt. Opp. No. 4 at 5.

28   Case No.: 5:20-cr-00425-EJD-1
     ORDER RE MOTIONS *IN LIMINE*

                                    25

1       Defendant argues that the Government cannot "use the violation of a civil statute to *ipso*

2 *facto* 'supply a crucial element' of a criminal offense." Def. MIL No. 4 at 6–7 (citing cases).

3 However, this case differs from the cases cited by Defendant. For example, in *United States v.*

4 *Christo*, 614 F.2d 486 (5th Cir. 1980), the primary case on which Defendant relies, the defendant

5 was indicted for misapplication and false entry based on the alleged over drafting of his checking

6 account in violation of 12 U.S.C. § 375. At trial, the government repeatedly referred to the

7 defendant's violations of the civil statute and the court instructed the jury that it could find that the

8 § 375 violations constituted a criminal misapplication of bank funds. The Fifth Circuit reversed,

9 finding that the government's evidence and argument concerning violations of § 375a

10 "impermissibly infected the very purpose for which the trial was being conducted[,] [which was]

11 to determine whether [the defendant] willfully misapplied bank funds with an intent to injure and

12 defraud the bank, not whether Christo violated a regulatory scheme prohibiting the bank from

13 extending him a credit in excess of $5,000." *Id.* at 492.

14       However, evidence of a regulatory violation, like a report indicating a company's CLIA

15 violation, may be relevant to that company's alleged misrepresentations because it "tends to show

16 [the defendant's] state of mind, knowledge, and intent regarding [his] representations." *United*

17 *States v. Holmes*, 2021 WL 2044470, at *10 (N.D. Cal. May 22, 2021); *see also United States v.*

18 *Wolf*, 820 F.2d 1499, 1505–06 (9th Cir. 1987) (allowing evidence of civil regulatory violations if

19 the evidence "was not directly or indirectly an element of any of the charges" and "provided

20 background information bearing on motive and intent").

21       This case differs from *Christo* in two important ways. First, the government does not

22 intend to argue that Defendant is guilty of health care fraud because he violated state and federal

23 regulations by engaging in the operations of the laboratory. Govt. Opp. No. 4 at 6. Second, the

24 Government does not intend to rely on CAP's conclusion as the sole proof that Defendant used

25 false and fraudulent means to obtain health care insurance funds. Instead, the Government plans

26 to introduce evidence that Defendant is guilty of health care fraud, in part, because he deceived,

27 and attempted to deceive, insurance payors by obtaining certifications through false

United States District Court
Northern District of California

United States District Court
Northern District of California

representations about his role and the roles of Taguchi and others.  It is true that this evidence will reference various regulations and CAP's findings, and that the Government will have to prove that Defendant contravened certain regulations that were material to payors.  However, the focus of the evidence is not that Defendant violated civil regulations, but that he did so to obtain reimbursements that he was not entitled.  Indeed, "that the government's proof will include evidence that defendants violated federal regulations does not mean that the government's allegations fail to charge defendants with a federal crime."  *United States v. Berger*, 22 F. Supp. 2d 145, 149–50 (S.D.N.Y. 1998).

Put differently, it is irrelevant if, in proving the elements of the crimes charged, the government also demonstrates that the defendant violated a civil administrative regulation.  The issue in *Christo* was not that the government introduced evidence of a civil violation, but that it merged the civil violation into the charged offense and thus did not prove the elements of the charged crime.  Here, the violation of a civil regulatory scheme, while obviously interwoven with the Government's allegations, is not alone forming the basis for the charged conduct.  As the SI alleges, Defendant made false statements about Arrayit's regulatory success to enable Arrayit to submit claims to and obtain money from Medicare, Medicaid, TRICARE, and commercial insurers.  SI ¶¶ 38–39.  The statements made to the relevant regulatory bodies are thus part and parcel of the overall scheme and are relevant.

Further, because the CLIA evidence is directly relevant to and probative of the charged healthcare fraud and conspiracy, its value is not outweighed by the danger of unfair prejudice or confusion.  Fed. R. Evid. 403.  The Court will, however, instruct the jury about the proper use of the evidence, namely that its purpose is to demonstrate healthcare fraud, not CLIA violations.  *See Holmes*, 2021 WL 2044470 at *43 (admitting evidence about industry standards violations subject to a curative instruction); *see also United States v. Heine*, 2017 WL 449632 (D. Or. Feb. 2, 2017) (holding that testimony about violations of FDIC regulations was admissible if the jury was instructed that defendants were being criminally charged with bank fraud, not FDIC violations).

Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*

1        Finally, the Government argues that the CAP report itself is exempt from the rule against

2   hearsay under Federal Rule of Evidence 803(8)(a)(iii), the business record or public record

3   exception.  The Government indicates that the report is admissible as nonhearsay to demonstrate

4   state of mind, a fact Defendant does not dispute.  Because it is unclear if the Government will

5   attempt to introduce the report using Rule 803(8)(a)(iii), the Court **DEFERS** ruling on the

6   admissibility of the CAP report itself.  However, the Court **DENIES** Defendant's motion to

7   preclude evidence regarding false statements made in connection with Arrayit's CLIA application.

8        **E.  Defendant's MIL No. 5 to Exclude Evidence and Preclude Statements
9          Regarding Alleged Payments to Marketers and Submission of Claims to
       Federal Health Care Programs**

10       Pursuant to Federal Rules of Evidence 401 through 403, Defendant moves to exclude

11  evidence and preclude mention at trial of alleged payments made (1) to marketers to induce

12  referral of patients to Arrayit and (2) to induce the referral of patients to Arrayit in connection with

13  a federal health care program.

14       On May 28, 2022, this Court denied Defendant's motion to dismiss the Eliminating

15  Kickbacks in Recovery Act of 2018 ("EKRA") claims charged in Counts Four through Six.

16  Defendant's motion to preclude evidence of payments to marketers simply incorporated his

17  motion to dismiss briefing, which remained pending at the time Defendant filed this MIL.  The

18  Court's subsequent decision, which held that EKRA applies to indirect renumerations, resolves the

19  first part of Defendant's motion.

20       Defendant also moves to exclude evidence of illegal kickbacks paid in exchange for the

21  referral of Medicare, Medicaid, and TRICARE patients.  Defendant argues this evidence is neither

22  relevant nor admissible because EKRA does not reach kickbacks paid to federal insurers.  The

23  Government disagrees and argues that this evidence is relevant to the conspiracy charged in Count

24  1 of the SI and to Defendant's motive, intent, knowledge, and absence of mistake regarding

25  Counts Four through Six, the EKRA counts.

26       The Court agrees with the Government that evidence that Arrayit paid kickbacks in

27  connection with federal health care programs is relevant to Count One.  Further, the Court agrees

United States District Court
Northern District of California

that this evidence is relevant and probative of Defendant's knowledge, intent, modus operandi, plan, absence of mistake, and lack of accident regarding Counts Four through Six and is thus admissible under Federal Rule of Evidence 404(b)(2).

The Court understands Defendant's main argument to be that "mixed" referrals, that is a kickback payment for the referral of *both* Medicare and commercial insurance patients, should be excluded because EKRA expressly excludes its application to conduct covered by the Anti-Kickback Statute ("AKS"). The Court disagrees with this reading of EKRA. It is nonsensical that someone may escape liability under EKRA if they "bundle" or "mix" referrals. Kickbacks paid for the referral of commercial insurance are not immunized simply because the defendant may have included the payment of those kickbacks in a larger check that also involved payments for patients with other federal insurance. *See United States v. Kats*, 871 F.2d 105, 108 (9th Cir. 1989) (interpreting similar language in the Anti-Kickback Statute).

To avoid any Rule 403 issues, the Court will instruct the jury that the elements of Counts Four through Six involve the payment of illegal kickbacks and bribes in connection with claims to the Commercial Insurers. If any "bundled" kickbacks are presented, Defendant may request that a special instruction be given to avoid juror confusion. Based on the foregoing, the Court **DENIES** Defendant's motion to exclude evidence regarding "mixed" payments.

### F. Defendant's MIL No. 6 to Exclude Evidence and Preclude Statements Regarding Wealth and Lifestyle

Pursuant to Federal Rules of Evidence 401 through 403, Defendant moves to exclude evidence and preclude mention at trial regarding Defendant's alleged wealth and lifestyle. The Government "does not plan to make prejudicial appeals to class prejudice and does not plan to introduce evidence of specific purchases or details reflecting branding of clothing, hotels, or other personal items." Govt. Opp. No. 6 at 2. The Government does intend to introduce bank records and other financial records to demonstrate Arrayit and Defendant's financial status during the relevant time frame. The Government also plans to introduce evidence of the number of Arrayit shares Defendant personally owned and evidence that Defendant was intensely focused on

United States District Court
Northern District of California

maintaining and increasing the price of the stock for his personal benefit and the benefit of his family members. *Id.* This evidence will be used to "demonstrate a nexus between the financial condition of [D]efendant and his scienter." *Id.*

In *Holmes*, this Court held that evidence of poverty or wealth is "not admissible standing alone but may be admissible to prove motive, knowledge, or intent," particularly where there is "a connection to an individual's participation in criminal activity." 2018 WL 2044470, at *4. This Court excluded evidence of wealth and spending not on relevance grounds, but on prejudice grounds. The Court was concerned that evidence of Holmes's accumulation of luxury items, standing alone, was prejudicial.

In contrast, in *United States v. Reyes*, 660 F.3d 454, 464 (9th Cir. 2011), the Ninth Circuit determined that evidence of gains from stock option backdating was admissible to permit the jury to "draw a reasonable inference that [the defendant] knew what he was doing." The Ninth Circuit clarified that the government may introduce evidence about a defendant's motive for involvement in a scheme "even if such evidence is generally not sufficient, standing alone, to prove intent to defraud." *Id.* at 463. Further, specific evidence about the defendant's personal, monetary gain was admissible because it was probative of the defendant's "motive, knowledge, and intent to participate in the backdating scheme." *Id.* The evidence "fell far short of meeting the level required to find unfair prejudice." *Id.*

This case is like *Reyes*. Evidence about Arrayit's financial condition is directly relevant to the charged conduct, namely whether Defendant's statements about the financial condition were false when made. Further, evidence pertaining to the financial distress of Arrayit demonstrates motive to commit the alleged crimes. *See United States v Mitchell*, 172 F.3d 1104, 1109 (9th Cir. 1999). Finally, the fact that Defendant personally owned a large amount of Arrayit shares and thus stood to benefit from the alleged securities fraud scheme, is relevant to show motive and intent. *See United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2017) ("Evidence that the defendant personally profited from a fraud may provide circumstantial evidence of an intent to participate in that fraud."). Based on the foregoing and given that the Government only intends to

1    introduce relevant evidence about Defendant and Arrayit's financial condition (like bank records),

2    the Court **DENIES** Defendant's motion to exclude evidence and preclude statements regarding his

3    financial status.

### G.   Defendant's MIL No. 7 to Exclude Evidence and Preclude Statements Regarding Investor Testimony

6          Pursuant to Federal Rules of Evidence 401 through 403, Defendant moves to (1) exclude

7    evidence and preclude mention at trial of the nature of an investor's investment and the amount of

8    loss, if any, suffered because of trading Arrayit stock and (2) limit investor testimony about

9    materiality.

10         Defendant correctly argues that the Government does not have to show that the victims

11   suffered a loss to satisfy the elements of securities fraud.  *See S.E.C. v. Apuzzo*, 689 F.3d 204, 212

12   (2d Cir. 2012) ("[I]n an enforcement action, civil or criminal, there is no requirement that the

13   government prove injury, because the purpose of such actions is deterrence, not compensation.");

14   *see also S.E.C. v. Am. Growth Funding II, LLC*, 2018 WL 6322145, at 1 (S.D.N.Y. Dec. 4, 2018)

15   ("Investor losses or profits are thus irrelevant.").

16         However, this does not mean that evidence of loss is irrelevant.  "Proving specific intent

17   in . . . fraud cases is difficult, and, as a result, a liberal policy has developed to allow the

18   government to introduce evidence that even peripherally bears on the question of intent."  *United*

19   *States v. Copple*, 24 F.3d 535, 545 (3d Cir. 1994).  Proof that someone was victimized by the

20   fraud can be used to demonstrate the schemer's intent.  *See United States v. Heimann*, 705 F.2d

21   662, 669 (2d Cir. 1983) ("While technically the success or failure of a scheme to defraud is

22   irrelevant in a mail fraud case, realistically, when the contested issue is intent, whether or not

23   victims lost money can be a substantial factor in a jury's determination of guilt or innocence."

24   (citation omitted)).  Accordingly, evidence about the victims' losses, specifically that Defendant

25   personally persuaded investors to invest and/or refrain from selling shares after investors shared

26   their financial positions, is relevant to show Defendant's specific intent to defraud.

27

28   Case No.: 5:20-cr-00425-EJD-1
     ORDER RE MOTIONS *IN LIMINE*

United States District Court
Northern District of California

1    Further, the evidence is not unduly prejudicial.  *See United States v. Elliot*, 771 F.2d 1046,

2  1051 (7th Cir. 1985) ("While it is true that actual losses are not necessary, we think the rule is a

3  permissive one: if there are actual losses, they may be proved." (citation omitted)); *see also United*

4  *States v. Forbes*, 2006 WL 2792883, at *5 (D. Conn. 2006) (noting that evidence of victim loss is

5  "highly probative and relevant to the issue of materiality").  However, while the Government may

6  elicit testimony about the loss itself, it may not probe the impact that the loss caused.  *See Copple*,

7  24 F.3d at 546.  The Court thus **DENIES** Defendant's motion to exclude testimony about loss.

8    Finally, the Parties seem to agree that witnesses may testify as to materiality.  *See* Def.

9  Reply at 19.  Defendant now seeks "as a precaution some offer of proof by the Government before

10  calling investor victims" that any testimony about materiality will conform to case law.  Rather

11  than guess at what a witness might testify to, the Court **DEFERS** ruling on Defendant's motion to

12  limit investor testimony about materiality unless and until the Government seeks testimony about

13  materiality from an investor-victim.

### H.  Defendant's MIL No. 8 to Exclude Evidence and Preclude Statements Regarding IHUB and Other Social Media Platforms

16    Pursuant to Federal Rules of Evidence 401 through 403, 801 through 803, 901, and 902,

17  Defendant moves to exclude evidence relating to Investors Hub ("IHUB").

18    The Government alleges that through his scheme, Defendant used press releases, email,

19  and Twitter to communicate with the public and investors about Arrayit.  On these platforms,

20  Defendant allegedly made misrepresentations to investors and potential investors about Arrayit's

21  allergy test sales, financial condition, prospects, and business relationships with large public

22  companies and government agencies.  According to the Government, Defendant's

23  misrepresentations would be reposted or shared on IHUB.

24    For example, in March 2020, Defendant sent the following email to dozens of investors

25  who had inquired about the COVID-19 test:

26      Dear Valued Customer, We received more than 50,000 requests for
      our finger stick blood test for SARS-CoV-2, the virus that causes
27      coronavirus disease 2019 (COVID-19).  Our team is coordinating

28  Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*

*United States District Court*
*Northern District of California*

1
2

> with local, state and federal agencies and with our distributors to make
> this test available to as many patients as possible on an expedited
> timeline.  Please consult our website and press releases for updates.
> Best Regards, Arrayit Corporation

3   SI ¶ 32(d).  Count Nine of the SI charges Defendant with an execution of the scheme to defraud

4   investors in connection with this email.  SI ¶ 60.  The Government intends to introduce evidence at

5   trial that will show that this email was reposted publicly on IHUB and that this email influenced

6   the decisions of investors to invest in the company.  Govt. Opp. No. 8 at 2.  The Government also

7   expects that the evidence at trial will show that Defendant was aware of the posts on IHUB and

8   wanted to ensure that positive messages about Arrayit were disseminated on IHUB.

9          Defendant's objections focus on authentication issues.  However, the Government intends

10   to authenticate the social media records that it will produce at trial.  Further, because the

11   Government does not intend to introduce the records for their truth, but rather to demonstrate

12   effect on the listener, Rules 801 and 803 do not apply.  *See United States v. Kirk*, 844 F.2d 660,

13   663 (9th Cir. 1988).  It is premature to address authentication objections.  The Court **DEFERS**

14   ruling on this motion unless and until the Government introduces the evidence and fails to lay an

15   adequate foundation.  At that time, the Court will also address any Rule 403 objections.

### I.   Defendant's MIL No. 9 to Exclude Evidence and Preclude Statements Regarding Termination of E*Trade Account

18          The Government does not oppose Defendant's motion *in limine* to exclude evidence that

19   E*Trade Securities LLC terminated Defendant's account.  Govt. Opp. No. 9 at 2.  Based on this,

20   the Court **GRANTS** Defendant's motion to exclude evidence and preclude statements regarding

21   the termination of Defendant's E*Trade Account.

### J.   Defendant's MIL No. 10 to Exclude Evidence Regarding Arrest and News Media

24          Pursuant to Federal Rules of Evidence 401 through 403, Defendant moves to exclude

25   evidence relating to Defendant's arrest and any press releases by the Government or news media

26   regarding this case.  The Court agrees that the Government may not argue to the jury that it should

27   deduce a negative inference from Defendant arrest.  However, it is unclear at this point whether

28   Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*

United States District Court
Northern District of California

1
2
3
4
5
6

Defendant's arrest and the post-arrest coverage will be relevant.  For example, as the Government notes, this evidence may become relevant if Defendant attempts to argue that Arrayit's CLIA certification was not revoked.  Govt. Opp. No. 10 at 2.  Accordingly, the Court **DEFERS** ruling on this motion unless and until the Government attempts to introduce evidence regarding Defendant's arrest and/or about post-arrest media releases.  At that time, Defendant may raise his Rule 401 and 403 objections.

7

### K.  Defendant's MIL No. 11 to Exclude Post June 9, 2020, Evidence

8
9
10
11
12
13

Pursuant to Federal Rules of Evidence 401 through 403,[3] Defendant moves to exclude evidence of Arrayit's activities after June 9, 2020.  Specifically, Defendant moves to exclude (1) evidence that Arrayit sent in response to a grand jury subpoena and (2) evidence from witnesses, including correspondence from July 2020 relating billing.  While the Government agrees that there are limits to the type of post-conspiracy evidence that can be admitted at trial, it argues that the Court should deny Defendant's motion as overly broad and premature.

14
15
16
17
18
19
20
21
22
23
24
25

Defendant was charged by complaint and arrested on June 9, 2020.  The SI alleges that beginning in or around 2018, and continuing in or around June 2020, Defendant and others conspired to defraud health care benefits programs by submitting false and fraudulent claims to Medicare, Medicaid, TRICARE, and commercial insurers for Arrayit's allergy and COVID-19 tests that "were (i) procured by the payment of kickbacks and others; (ii) medically unnecessary; (iii) not eligible for reimbursement; and/or (iv) not provided as represented."  SI ¶ 35.  The SI alleges that the conspiracy expanded in 2020 when Defendant and others began offering COVID-19 testing that was bundled with its original allergy tests.  Defendant and others allegedly obtained orders for the bundled tests by making false and fraudulent statements to health care providers, patients, and others that, among other things, the purported a need to bundle the COVID-19 test with Arrayit's allergy test.  Arrayit then billed insurance for the medically unnecessary bundled tests.  *See* SI ¶¶ 36–47; 48–49 (Counts 2 & 3).

26
27
28

---

[3] Defendant does not object to the introduction of this evidence on Rule 404(b) grounds.  *See United States v. Anderson*, 741 F.3d 938 (9th Cir. 2013).

1    Defendant argues that post-June 9, 2020, evidence is not relevant to the charged conduct,

2    which spans from 2018 through June 2020.  In the alternative, he argues that post-charge evidence

3    would serve to unnecessarily confuse the jury as to the dates of the conspiracies.  Regarding

4    relevance, Defendant argues that after June 2020, he was unable to work on billing or collection at

5    Arrayit due to the terms of his conditional release.  Thus, because he no longer worked in full

6    capacity at Arrayit, any evidence from Arrayit after June 9, 2020, is irrelevant as to the charges

7    against him.

8        Post-conspiracy is admissible if it is probative of the existence of the conspiracy.  *United*

9    *States v. Dowie*, 411 F. App'x 21, 27 (9th Cir. 2010); *United States v. Koopers Co., Inc.*, 652 F.2d

10   290, 298 (2d Cir. 1981).  On the current record, the Court cannot determine if the proffered post-

11   conspiracy evidence is relevant.  First, Defendant broadly seeks to prevent the Government from

12   introducing evidence from Arrayit's response to the grand jury subpoena.  Defendant does not

13   identify what evidence he seeks to include in this category.  Without some identification of the

14   particular evidence that Defendant seeks to exclude, the Court cannot determine whether this

15   evidence is relevant or not.

16       Second, Defendant seeks to exclude "correspondence allegedly sent to [witnesses] from

17   Arrayit in July 2020 relating to billing or COVID-19 testing."  Def. MIL No. 11 at 3.  This

18   correspondence relates to Wendy Woodard, an expected Government trial witness, and the health

19   care patient whose claim serves as the basis for Count Two.  The Government expects Ms.

20   Woodard to testify about her experience receiving an Arrayit COVID-19 test that was billed in

21   combination with an allergy test in May 2020.  Ms. Woodard received a COVID-19 test and

22   provided her insurance information.  She did not request an allergy test.  Arrayit billed Meritain

23   Health $5,293.28 and was paid $4,424.19 for the allergy test.  Arrayit attempted to bill Ms.

24   Woodard for the remaining balance.  In July 2020, Ms. Woodard received a "settlement offer"

25   from Arrayit signed by Rene Schena, stating:

26           Arrayit Corporation provided laboratory services as prescribed by
             your doctor.  We billed your insurance company for these services
27           and they provided an explanation of benefits which indicates that

United States District Court
Northern District of California

> some charges were covered by y our policy but were applied to a copay or deductible, and that the patient is liable for these charges.
>
> We write to you today to propose a settlement offer.   Arrayit Corporation is willing to accept a payment of $869.09 to settle this claim in full.

After receiving this offer, Ms. Woodard wrote back that she had never wanted to receive the allergy testing.

The Government argues that this correspondence is relevant to proving both the existence of the conspiracy and telling the complete story of the execution of the health care fraud scheme charged in Count Two.  In the Government's view, the correspondence demonstrates that Arrayit bundled COVID-19 with unnecessary allergy testing.  The Government further argues that evidence that Arrayit charged and sought to collect payment for unrequested testing is relevant to the charged fraud and conspiracy.  Govt. Opp. No. 11 at 4.

The Court cannot decide whether Ms. Woodard's testimony regarding the settlement offer is relevant or unduly prejudicial at this time.  No foundation has been laid for Ms. Woodard and no evidence regarding the scope of the schemes has been introduced.  Without context for this testimony, the Court is unable to determine whether the evidence is relevant, prejudicial, or barred under Rule 408.  Accordingly, the Court **DEFERS** ruling on Defendant's motion to exclude post-charged evidence unless and until the Government seeks to introduce this type of evidence.

### L.   Defendant's MIL No. 12 to Exclude Evidence and Preclude Statements Re Jason Nielsen and Pennystock Alert

Pursuant to Federal Rules of Evidence 401 through 403 and 801 through 803 and the Confrontation Clause of the Sixth Amendment, Defendant moves to exclude evidence and preclude mention at trial that there is any connection between the alleged conduct of Jason Nielsen and Defendant.

Jason Nielsen ("Nielsen") was a large investor in Arrayit who has been separately charged and has pled guilty to securities fraud for his own scheme to defraud Arrayit investors.  *United States v. Jason Nielsen*, 5:22-cr-00161-EJD.  Nielsen frequently posted on public message boards related to over-the-counter securities, including the Arrayit IHUB board.  Nielsen used the

Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*

United States District Court
Northern District of California

username "PennyStockAlert" when posting.

In 2019 and 2020, Nielsen engaged in a "scalping" and "spoofing" scheme to defraud investors and potential investors in Arrayit securities.  First, Nielsen communicated materially false and misleading information about the nature of his personal financial stake in Arrayit securities using IHUB to induce others to purchase Arrayit securities and thereby drive up the stock's price, while simultaneously and secretly selling his own previously acquired shares at an artificially inflated price (a practice called "scalping").  Second, Nielsen also placed orders to buy large quantities of Arrayit stock that he intended to cancel before execution to signal the existence of demand.  He then was able to sell his shares at artificially inflated prices (a practice called "spoofing").

While engaged in his own scheme to defraud investors, Nielsen reposted and amplified many of the false and misleading statements made by Defendant about Arrayit, including about Arrayit's COVID-19 test.  Defendant wrote Nielsen emails that contained information that Nielsen reposted on the IHUB boards.  Nielsen also had numerous in-person interactions with Defendant and visited the Arrayit laboratory to meet with Defendant.

Importantly, Defendant is not connected with Nielsen's conduct.  The Government neither asserts in this case nor in its civil case that Defendant and Nielsen acted in concert.  As such, the Court agrees with Defendant that evidence suggesting that Defendant and Nielsen worked together is inadmissible.  Witnesses will not be permitted to speculate about any connection between Defendant and Nielsen.  As a large shareholder in Arrayit, Neilsen possesses relevant, admissible testimony.  His testimony may have some relevance but because it remains unclear how or if the Government intends to use Neilsen's testimony in its case-in-chief, and how Defendant intends to use Nielsen in his defense, the Court **DEFERS** ruling on the admissibility of Neilsen's testimony.

### M. Defendant's MIL No. 13 to Exclude Evidence of Pre-2018 Conduct

Pursuant to Federal Rules of Evidence 401 through 403, Defendant moves to exclude evidence of pre-2018 conduct.  The SI charges Defendant with two counts of healthcare fraud conspiracies.  The first healthcare fraud conspiracy (Count One) is alleged to have occurred

Case No.: 5:20-cr-00425-EJD-1
ORDER RE MOTIONS *IN LIMINE*

between 2018 and June 2020, and the two substantive healthcare fraud counts thereunder (Counts Two and Three) are alleged to have occurred in May 2020.  SI ¶¶ 32, 49.  The second conspiracy, charged under the Eliminating Kickbacks in Recovery Act of 2018 ("EKRA") (Count Four), is alleged to have occurred between 2017 and June 2020, and the two substantive counts (Counts Five and Six) are alleged to have occurred in 2019 and 2020, respectively.  SI ¶¶ 51, 58.  The three counts of securities fraud (Counts Seven through Nine) are alleged to have occurred "on or about" November 11, 2018, August 8, 2019, and March 19, 2020, respectively.  Defendant argues that evidence regarding pre-2018 conduct is inadmissible.  Specifically, Defendant contends that because EKRA was not enacted until October 24, 2018, the introduction of evidence that occurred before that date violates due process.

The Ex Post Facto Clause prohibits Congress from passing a law that: "(1) makes an act a crime that was legal when committed; (2) makes a crime greater than it was when it was committed; (3) increases the punishment for a crime after it has been committed; or (4) deprives the accused of a legal defense that was available at the time the crime was committed." *United States v. Harris*, 79 F.3d 223, 228 (2d Cir. 1996) (citation omitted).  The protections afforded by the Ex Post Facto Clause have been extended to the application of judicial precedent by the court under the Due Process Clause of the Fifth Amendment.  *Id.* at 229.

For statutes governing continuing offenses, such as conspiracy, the law is clear that "the Ex Post Facto clause is not violated by application of a statute to an enterprise that began prior to, but continued after, the effective date of the statute." *Id.* (citation and quotation marks omitted).  "When it is shown that a conspiracy straddled the enactment of a statute, the government may introduce pre-enactment evidence to demonstrate the conspiracy's genesis, its purpose, and its operation over time." *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999) (rejecting Ex Post Facto Clause where "jury was soundly instructed on the proper evidentiary value of pre-enactment conduct, and was reminded of the post-statute date range of the charge").

The statute applicable here—18 U.S.C. § 371—went into effect on October 24, 2018.  The allegations in Count Four that predate October 24, 2018 (SI ¶¶ 1–32, 50–51) involve offenses that

United States District Court
Northern District of California

the Government alleges continued after the conspiracy statute became effective.  The Government may introduce this pre-enactment evidence to demonstrate the conspiracy's genesis, its purpose, and its operation over time.  *United States v. Stehl*, 2013 WL 12170491, at *7 (C.D. Cal. Nov. 27, 2013); *United States v. Marchesani*, 457 F.2d 1291, 1294–95 (6th Cir. 1972) ("It was permissible to show that the fraudulent agreement was entered upon long before the Dyer Act took effect, and was kept up after the passage of that act." (citation and quotation marks omitted)).  However, to minimize any risk that the jury may convict Defendant on Count Four solely based on pre-enactment conduct, counsel for Defendant should be prepared to make any necessary objections at trial and the parties should include proposed jury instructions that address the proper evidentiary value of pre-enactment conduct.  Based on this, the Court **DENIES** Defendant's motion to exclude pre-2018 evidence, subject to an appropriate limiting instruction.

### N.   Defendant's MIL No. 14 to Exclude Evidence and Preclude Government's 404(b) Evidence

Pursuant to Federal Rules of Evidence 403, 404, 801 through 803, 901, and 1002, Defendant moves to exclude inadmissible character evidence.  On March 7, 2022, the Government provided notice that it may introduce certain "other acts" evidence at trial.  The letter listed four areas of evidence that the Government may seek to introduce:

- Defendant engaged in fraud in connection with the marketing and sale of microarray technology, including but not limited to in connection with the sale of a defunct microtissue arrayer to the Alfred I. duPont Hospital.

- Defendant engaged in fraud in connection with the marketing and sale of PinnerTest, a food intolerance test.

- Defendant engaged in fraud and market manipulation in connection with the use of Twitter and other public accommodations, including but not limited to as alleged in FINRA Matter No. 2015047629.

- Defendant engaged in fraud against investors, including but not limited to as alleged in *Taub, et al v. Arrayit Corporation*, 15-cv-1366, S.D.N.Y. (2015).  In particular, the

Government may introduce evidence about the fact that investors were induced to invest in

Arrayit through false representations, including about the use of the investor funds.

Def. MIL No. 14, Ex. A.  The Government stated that this "evidence maybe introduced to prove

that [] Defendant intended to commit fraud and that [] Defendant knew his representations were

false."  Further, "[e]vidence [that Defendant] engaged in past fraudulent transactions with Arrayit

clients and investors is relevant to whether [he] intended to defraud clients and investors as alleged

in the Superseding Indictment."  *Id.* at 2.

### 1.  Legal Standard

Rule 404(b) states as follows:

> (1) Prohibited Uses.  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) Permitted Uses; Notice in a Criminal Case.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On request by a defendant in a criminal case, the prosecutor must:

> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

> (B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

Rule 404(b) is a rule "of inclusion which admits evidence of other crimes or acts relevant

to an issue in the trial, except where it tends to prove only criminal disposition."  *Heath v. Cast*,

813 F.2d 254, 259 (9th Cir. 1987). "Rule 404(b) provides that the district court may admit

evidence of prior bad acts if it (1) tends to prove a material point; (2) is not too remote in time; (3)

is based on sufficient evidence; and, (4) in some cases, is similar to the offense charged."  *United

States v. Lozano*, 623 F.3d 1055, 1059 (9th Cir. 2010).  However, "when offered to prove

knowledge, . . . the prior act need not be similar to the charged act as long as the prior act was one

which would tend to make the existence of the defendant's knowledge more probable than it

would be without the evidence."  *United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2015)

United States District Court
Northern District of California

1    (citation omitted).  If the four *Lozano* factors are satisfied, a court must balance the probative

2    value of the evidence against its prejudicial effect to determine whether it is admissible under Rule

3    403.  *United States v. Curtin*, 489 F.3d 935, 957 (9th Cir. 2007) (en banc).

4         Under Rule 404(b), if a defendant so requests, the Government must "provide reasonable

5    notice of the general nature of any such evidence that the prosecutor intends to offer at trial."  This

6    notice is "designed to reduce surprise and promote early resolution of admissibility issues."

7    *United States v. Vega*, 188 F.3d 1150, 1153 (9th Cir. 1999).  A district court has discretion in

8    deciding whether the Government has satisfied the Rule's notice requirement.  *See* Fed. R. Evid.

9    404, Advisory Committee Notes on 1991 Amendments ("The court in its discretion may, under

10   the facts, decide that the particular request or notice was not reasonable, either because of the lack

11   of timeliness or completeness.").

12                    **2.  Analysis**

13                    **a.  Adequacy of the Government's Notice**

14        Rule 404(b) requires the Government to "provide reasonable notice of the general nature of

15   [Rule 404(b)] evidence" if a defendant requests such notice.  Fed. R. Evid. 404(b)(2)(A).  In

16   giving its notice, the Government stated that it intended to use evidence of prior acts "to prove

17   [Defendant's] motive, intent, plan, knowledge, absence of mistake, and lack of accident to commit

18   the crimes alleged in the Superseding Indictment."  Def. MIL No. 14, Ex. A.  The Government

19   further stated this evidence may be introduced to prove that Defendant intended to commit fraud

20   and that Defendant knew his representations were false.  *Id.*

21

22        Defendant argues that this notice is inadequate to satisfy Rule 404(b).  The Court

23   disagrees.  Rule 404(b)(3) is a general notice requirement.  The rule only "requires the prosecution

24   to apprise the defendant of the *general nature* of the evidence of extrinsic acts."  Fed. R. Evid.

25   404, Advisory Committee Notes on 1991 Amendments.  The Government has stated that it intends

26   to use the prior acts evidence to show that Defendant had knowledge and intent and has provided

27   Defendant with the nature of the evidence that it intends to introduce.  This is more than sufficient.

28   Case No.: 5:20-cr-00425-EJD-1
     ORDER RE MOTIONS *IN LIMINE*

United States District Court
Northern District of California

1    *See United States v. Shayota*, 2016 WL 5791376, at *3 (N.D. Cal. Oct. 4, 2016).

2                                **b.   *Lozano* Factors**

3           Defendant moves to exclude the four categories of evidence that were the subject of the

4    Government's Rule 404(b) notice.  In opposition, the Government states that it does not plan to

5    introduce evidence regarding the PinnerTest and the FINRA Matter.  Accordingly, the Court

6    **DEFERS** ruling on the admissibility of these categories of evidence unless and until the

7    Government seeks to introduce them.  The Court turns to the remaining two categories of

8    evidence—the microtissue arrayer and the *Taub* complaint.

9                                **1.   Microtissue Arrayer**

10          The Government provided notice of its intent to introduce evidence of fraud in connection

11   with the marketing and sale of a defunct microtissue arrayer to the Alfred I. duPont Hospital.  In

12   summary, Arrayit sold a microtissue arrayer to the Hospital in December 2014.  After the Hospital

13   was unable to install the microarray when it arrived in April 2015, Defendant personally traveled

14   to Nemours (where the Hospital is) in July 2015.  While at Nemours, Defendant locked himself in

15   the Nemours laboratory and took a video of the laboratory but was unable to answer Nemours'

16   questions about the microarrayer or get it in working order.  Even so, shortly after the visit,

17   Arrayit's Twitter account posted about the installation and touted Arrayit's relationship with the

18   Hospital, even though the arrayer still was not working properly.  *See* Arrayit Corporation

19   (@arrayit), Twitter (July 15, 2015, 11:43 AM), https://twitter.com/arrayit/status/

20   621344228732354561.  Ultimately, the Hospital had to send the arrayer back and pursue legal

21   action.

22          The Government argues that this evidence is directly relevant to the manner and means of

23   Defendant's common scheme, as well as his modus operandi, intent, knowledge, and absence of

24   mistake regarding the charged securities fraud conduct in the SI.  *See* SI ¶¶ 29, 31(d) (alleging that

25   part of the scheme included "[m]aking false and misleading statements to investors about the

26   proliferation of Arrayit's proprietary allergy testing, and about 'deals' and other agreements to

27   spread Arrayit's proprietary allergy testing").  Specifically, the Government argues that the July

28

United States District Court
Northern District of California

1 | 2015 tweet about Arrayit's relationship with the Hospital is a "paradigmatic example of

2 | [Defendant's] common scheme" and is thus admissible under Rule 404(b) or as inextricably

3 | intertwined with Defendant's acts of securities fraud.  Govt. Opp. No. 14 at 4.

4 |      The Court agrees.  First, there is sufficient proof to find that Defendant committed the

5 | other bad act—there is direct evidence that the Hospital bought an arrayer, that the arrayer did not

6 | function correctly, and that the Hospital sent the arrayer back to Arrayit.  *See United States v.*

7 | *Romero*, 282 F.3d 683, 688 (9th Cir. 2002) (noting that this is a "low threshold").  Second, the

8 | evidence is material.  *Id.*  The Court agrees with the Government that evidence about Arrayit and

9 | the Hospital's relationship demonstrates knowledge by Defendant that Arrayit's products did not

10 | function as advertised.  This in turn demonstrates absence of mistake and intent.  Further, this

11 | exemplifies Defendant's pattern of using Twitter to advertise business relationships in a

12 | misleading manner, which is a key component of the alleged scheme to defraud investors.  Third,

13 | the evidence is timely, coinciding with the alleged scheme to defraud.  SI ¶ 29 ("Beginning in or

14 | around *2015* . . . ." (emphasis added)).  Finally, the evidence is not only similar, but identical to

15 | the charged offenses.  Due to this similarity, the Court finds that Rule 403 does not bar the

16 | introduction of the evidence.[4]  Accordingly, the Court **DENIES** Defendant's motion to exclude

17 | prior act evidence regarding Arrayit's dealings with the Alfred I. duPont Hospital.

18 | **2.  *Taub* Complaint**

19 |      The Government also seeks to introduce evidence relating to a civil lawsuit filed against

20 | Arrayit and Defendant in the Southern District of New York.  The lawsuit, brought by former

21 | Arrayit investors, pursues claims for breach of settlement agreement and fraudulent inducement.

22 | The suit alleges that Defendant made a series of false and misleading statements to one or more of

23 | the investors in 2013 relating to the development of diagnostic technology for pre-ovarian cancer.

24 | The Government seeks to introduce this evidence to demonstrate Defendant's intent, plan,

25 | knowledge, absence of mistake, or lack of accident in misrepresenting the development of

United States District Court
Northern District of California

[4] Defendant may propose a limiting instruction.

1   Arrayit's COVID-19 test.

2        There are two problems with this category of evidence.  First, *United States v. Bailey*, 696

3   F.3d 794 (9th Cir. 2012) seems to foreclose the Government from introducing a complaint alone to

4   demonstrate notice.  Second, the Court agrees with Defendant that allegations regarding pre-

5   ovarian cancer are distinct from allegations regarding COVID-19 tests.  The connection between

6   the tests is, at best, tenuous.  Given the low relevance, it seems likely that the probative value of

7   the evidence is outweighed by the danger of undue prejudice.  Accordingly, the Court **GRANTS**

8   Defendant's motion to exclude prior act evidence regarding the *Taub* complaint.

9              **O.  Defendant's MIL No. 15 to Exclude Evidence and Preclude Mention of**
               **Interview Statements**
10

11       Pursuant to the Confrontation Clause of the Sixth Amendment, Defendant moves to

12   exclude evidence and preclude mention of interview statements, including but not limited to

13   interview statement of any alleged co-conspirators.  The Government states in opposition that it

14   expects to call many of the co-conspirators referenced by Defendant, thus removing the

15   constitutional issue should their prior statements be introduced.  Considering this, the Court

16   **DEFERS** ruling on this motion *in limine* unless and until the Government attempts to introduce an

17   alleged coconspirator's testimonial, out-of-court statements.

18       **IT IS SO ORDERED.**

19   Dated: July 23, 2022

20

21

22                                                    EDWARD J. DAVILA
                                                     United States District Judge
23

24

25

26

27

28   Case No.: 5:20-cr-00425-EJD-1
     ORDER RE MOTIONS *IN LIMINE*

United States District Court
Northern District of California