UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| USA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MARK SCHENA,<br><br>　　　　Defendant. | Case No.   20-cr-00425-EJD-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL**<br><br>Re: ECF No. 220 |

Defendant Mark Schena was indicted on nine counts and found guilty by a unanimous jury of each of them. Pending before the Court is Defendant's motion for a judgment of acquittal as to Counts 1 through 6 and motion for a new trial as to Counts 7 through 9 (the "Motion"). Defendant also moves for a new trial as to Counts 1 through 6 should the Court deny his motion for a judgment of acquittal. Having reviewed the parties' written submissions and the relevant case law, and having heard oral argument on August 23, 2022 and January 30, 2023, the Court DENIES Defendant's motion for judgment of acquittal and motion for a new trial for the reasons discussed below.

**I.    BACKGROUND**

On May 18, 2021, the government filed the Superseding Indictment, charging Defendant Mark Schena with nine counts: conspiracy to commit health care fraud and wire fraud in violation of 18 U.S.C. § 1349 (Count 1); health care fraud in violation of 18 U.S.C. § 1347 (Counts 2–3); conspiracy to pay illegal kickbacks in violation of 18 U.S.C. § 371 (Count 4); payment of illegal kickbacks in violation of 18 U.S.C. § 220 (Counts 5–6); and securities fraud in violation of 15

Case No.: 20-cr-00425-EJD-1
ORDER DENYING DEFT.'S MOTS. FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL
1

1   U.S.C. §§ 78j, 78ff and 17 C.F.R. 240.10b-5 (Counts 7–9).  ECF No. 53 ("Superseding

2   Indictment").  The Superseding Indictment alleged that between 2015 and 2020, Defendant—then

3   the president of Arrayit Corporation, a publicly traded medical technology company that

4   conducted various laboratory tests—and co-conspirators engaged in a scheme to deceive (1)

5   commercial and government insurers (*i.e.*, Medicare, Medicaid, and TRICARE) about insurance

6   claims submitted to those insurers and (2) purchasers and sellers of Arrayit's securities, and the

7   market at large, about Arrayit's financial performance.  *Id.* at ¶¶ 1–2, 29, 38.

8         Trial began on July 26, 2022.  *See* ECF No. 189 ("7/26/22 Trial Tr.").  On August 23,

9   2022, following the presentation of evidence but before closing arguments or jury deliberation,

10  Defendant orally moved for a judgment of acquittal as to Counts 1 through 6 under Federal Rule

11  of Criminal Procedure 29.[1]  ECF No. 209 ("8/23/22 Trial Tr.") 2415:13–2416:8.  The government

12  opposed the motion, *id.* at 2416:11–2420:5, and the Court reserved decision on the motion, *id.* at

13  2420:9–11.  On September 1, 2022, the jury returned a verdict finding Defendant guilty on all nine

14  counts.  ECF No. 218.

15        On September 15, 2022, Defendant filed the instant motion, which furthered his oral

16  motion for a judgment of acquittal as to Counts 1 through 6, and included an additional motion for

17  a new trial as to Counts 7 through 9 (as well as for Counts 1 through 6, should the Court deny the

18  motion for a judgment of acquittal) under Federal Rule of Criminal Procedure 33.  ECF No. 220

19  ("Mot.").  Defendant does not advance any additional arguments in the Motion as to Count 1,

20  noting instead that he stands on the arguments made in the initial oral motion.  *Id.* at 3 n.1  The

21  government opposes the Motion, asserting that the evidence presented at trial was sufficient to

22  support the jury's verdict and that Defendant is not entitled to a new trial on any counts.  ECF No.

23  226 ("Opp.").  Defendant filed a reply, ECF No. 228 ("Reply"), and the Court heard oral argument

24  on the Motion on January 30, 2023.

---

[1] The motion was made outside the presence of the jury, who had been dismissed for the day.  8/23/22 Trial Tr. 2412:24, 2415:13–14.

Case No.: 20-cr-00425-EJD-1
ORDER DENYING DEFT.'S MOTS. FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL
2

## II. DISCUSSION

### A. Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 permits a court to set aside a jury's guilty verdict and enter a judgment of acquittal only if "the evidence is insufficient to sustain a conviction." Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Riggins*, 40 F.3d 1055, 1057 (9th Cir. 1994) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Courts accord great deference to a jury's determination. *See Jackson*, 443 U.S. at 318–19. "The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010). The Court must find that no rational jury could have convicted Defendant of Counts 1 through 6, namely, conspiracy to commit health care fraud, the commission of health care fraud, conspiracy to pay illegal kickbacks, and the payment of illegal kickbacks. That is, the Court must conclude that, viewing the facts in the light most favorable to the government, "the government's proof was insufficient as a matter of law." *Id.*; *see also United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). Pursuant to this standard, the Court holds there is sufficient evidence to convict Defendant of Counts 1 through 6.

#### 1. Count 1: Conspiracy to Commit Health Care Fraud and Wire Fraud

To prove a conspiracy to commit health care fraud and wire fraud under § 1349, the government had to prove (1) that Defendant and one or more co-conspirators agreed to commit health care fraud or wire fraud and (2) that Defendant became a member of the alleged conspiracy knowing at least one of its objects and intending to help accomplish it. Based on the evidence presented at trial, a reasonable juror could find that Defendant conspired with other individuals to commit health care fraud or wire fraud to avert Arrayit's financial collapse by submitting improper insurance claims to federal and commercial insurers related to allergy and covid-19 testing.

First, contextually, the government introduced evidence about the financial health of Arrayit and of Defendant and his wife, Renee Schena, who served as Arrayit's CEO. Arrayit was

losing money in at least 2015 and 2016, and had depended on outside sources—*i.e.*, loans—for financing. 8/10/22 Trial Tr. 1124:6–20. By early 2018, one of the lenders, TCA, was taking most of Arrayit's revenue as payback for a loan. 8/11/22 Trial Tr. 1297:15–22. In August 2018, Defendant took out a loan against his home, which was ostensibly to be secured by Arrayit's cash flow. Trial Ex. 922. The Schenas took on loans for Arrayit on atypical, unfavorable terms in order to shore up its finances. The jury could reasonably infer from these and other facts that Defendant was motivated to financially "save" Arrayit.

The government introduced evidence that Defendant did in fact agree with other co-conspirators to commit health care fraud to benefit Arrayit. For example, Defendant hired Dr. Julie Taguchi as Arrayit's lab director, leading to Arrayit's receipt of the regulatory licenses that permitted it to perform clinical patient sample tests and bill insurance. 8/12/22 Trial Tr. 1632:17–1633:3, 1653:11–23. However, the government introduced testimony that Dr. Taguchi did not execute the duties of a lab director; she did not run or review the quality of sample testing or did not supervise anyone. 8/16/22 Trial Tr. 1795:5–22. Defendant nonetheless submitted documents to regulators stating that Dr. Taguchi was in charge of Arrayit's laboratory and carried out supervisory responsibilities, as required for Arrayit's operating licenses. 8/12/22 Trial Tr. 1650:21–1651:4.

The government also introduced the testimony of Paul Haje, the former vice president of marketing of Arrayit and cousin of Renee Schena.[2] Mr. Haje informed the jury that he had pleaded guilty to conspiring with Defendant and others, including Renee Schena, Dan Williams, Marc Jablonski, and Dr. Taguchi, to submit false and fraudulent claims to government insurers, including Medicare and TRICARE, and to private insurers. 8/11/22 Trial Tr. 1282:7–1285:7. Mr. Haje testified that Defendant led Arrayit and its employees in a scheme under which Arrayit would bill government and private insurers for unnecessary and expensive allergy tests—after deceiving regulators in order to be licensed to perform and bill for such tests—that were sourced

---

[2] Arrayit was a "very small company" with about seven employees, most of whom were related to each other or close friends. 8/11/22 Trial Tr. 1289:24–1290:11.

1   from kickback payments. *See id.* at 1332:11–1341:24. Mr. Jablonski and Dr. Taguchi testified
2   along similar lines. *See* 8/9/22 Trial Tr. 743:4–744:25; 1758:24–1761:13. The payments to
3   marketers who sourced tests for Arrayit were transmitted via wire by Renee Schena, in amounts
4   decided by Defendant. 8/11/22 Trial Tr. 1291:22–1292:2. Given the evidence described above
5   and reviewing the evidence in the light most favorable to the government, the Court cannot
6   conclude that no rational jury would have convicted Defendant of Count 1. There is sufficient
7   evidence to support the verdict on Count 1.

### 2. Counts 2–3: Health Care Fraud

To prove health care fraud, the government had to prove that Defendant (1) knowingly and willfully (2) executed or attempted to execute (3) a scheme to defraud any health care benefit program. In Counts 2 and 3, the government charged Defendant with health care fraud related to the submission of claims to, respectively, a private insurance company on behalf of Wendy Woodward and Medicare on behalf of Teresa Resendez. Superseding Indictment ¶¶ 48–49. Defendant argues that a judgment of acquittal is required because the government "never produced any evidence of (1) the claim forms submitted by Dr. Chrono on behalf of Arrayit, (2) any evidence that Mr. Schena himself was at all involved in any aspect of the submission of the claim, or (3) any evidence of mens rea by Mr. Schena in connection with those counts." Mot. 6–7. Without this evidence, Defendant asserts, "[t]here was nothing from which the jury could find, even inferentially, that Mr. Schena had anything at all to do with the submission of those claims," so that no rational jury could find Defendant guilty of health care fraud in connection with either of the claim submissions at issue. *Id.* at 7. Defendant further contends that there was insufficient evidence for a rational jury to convict him under the *Pinkerton v. United States* theory of liability, *i.e.*, as a co-conspirator "criminally liable for reasonably foreseeable overt acts committed by others in furtherance of the conspiracy they have joined, whether they were aware of them or not." *United States v. Hernandez-Orellana*, 539 F.3d 994, 1007 (9th Cir. 2008) (citing *Pinkerton*, 328 U.S. 640, 647 (1946)). *Id.*

As described above, the government presented evidence that Defendant conspired to commit health care fraud. The jury heard from Dr. Catherine Tolentino of the California

United States District Court
Northern District of California

Department of Public Health that she would not have approved Arrayit's laboratory license—which allowed it to bill insurers for tests—but for Defendant's submission of documents stating that Dr. Taguchi was Arrayit's bona fide laboratory director, including a lab quality assurance manual that included false statements about Dr. Taguchi's role and supervision of the lab. 8/12/22 Trial Tr. 1650:25–1654:13; Trial Ex. 703. The claim submissions charged in Courts 2 and 3 could not have been charged but for these false representations by Defendant. The government also presented evidence that Defendant led a scheme to bill for medically unnecessary allergy testing, and to source such tests by making illegal kickback payments to marketers in exchange for patient referrals. 8/11/22 Trial Tr. 1332:11–1341:24; *id.* at 1361:7–21; 8/9/22 Trial Tr. 743:4–744:25; *id.* at 785:7–786:18.

The government also presented evidence showing that Arrayit's allergy testing revenues declined following the beginning of the covid-19 pandemic, and that subsequently Defendant made false statements about Arrayit's covid-19 test to obtain patient blood samples to then conduct additional allergy tests that were billed to insurers. 8/9/22 Trial Tr. 802:3–808:12; 8/11/22 Trial Tr. 1382:15–1383:1. Even after doctors informed Defendant that Arrayit's requisition forms should focus on covid-19 and not allergies, Defendant continued to market a combination of covid-19 and allergy testing and to unnecessarily bundle the two types of tests. 8/9/22 Trial Tr. 807:20–23. Specifically, both Ms. Woodward and Ms. Resendez received allergy testing when they did not want or need it—Ms. Woodward solely required a covid-19 antibody test, and Ms. Resendez was required to give her blood for a covid-19 test to enter a union hall building. 8/12/22 Trial Tr. 1703:11–1710:17; 8/19/22 Trial Tr. 2092:3–2101:5. Based on this and other evidence, a rational jury could have found that Defendant "knowingly and willfully executed or attempted to execute a scheme or plan to defraud health care benefit programs," including with respect to the submission of the claims charged in Counts 2 and 3.

Defendant argues that no rational jury could convict him of health care fraud with respect to Ms. Resendez's or Ms. Woodward's claims because the government did not present evidence that he himself submitted or discussed their specific claims. Mot. 7. Defendant further contends

Case No.: 20-cr-00425-EJD-1
ORDER DENYING DEFT.'S MOTS. FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL
6

that the jury therefore must have convicted Defendant based on *Pinkerton* liability, *i.e.*, based on the claim submission of a co-conspirator. *Id.* Defendant argues that the *Pinkerton* instruction was not appropriate because no other individual was charged with the substantive offense—according to Defendant, the actual claim submission—and that there was insufficient evidence to convict him even under the theory. *Id.* at 7 & n.2. As described above, a rational jury could have convicted Defendant based on the evidence of his intent to defraud insurers by orchestrating a scheme to become licensed to perform and then bill for unnecessary and unwanted allergy tests without relying on the *Pinkerton* instruction. Further, the government's presentation of evidence was also sufficient to result in a conviction under a *Pinkerton* theory, as it was reasonably foreseeable that claims for patients, including Ms. Woodward and Ms. Resendez, would be submitted to insurers within the scheme orchestrated by Defendant. A defendant "is liable for the acts of his co-conspirators though he was not aware of the performance of those acts, nor even of the existence of the actors." *United States v. Roselli*, 432 F.2d 879, 894 (9th Cir. 1970) (quoting *Hernandez v. United States*, 300 F.2d 114, 120 (1962)). The government was not required to identify a specific co-conspirator who performed the claim submission, *id.* at 895, and in fact Defendant had contracted a separate billing vendor to handle the submission of Arrayit's claims. Hiring an innocent third party to conduct the final act of claim submission does not remove Ms. Woodward's and Ms. Resendez's claims from the fraudulent scheme presented to the jury as orchestrated and intended by Defendant, and the Court cannot say that no rational jury would have convicted on this evidence.

### 3. Count 4: Conspiracy to Pay Illegal Kickbacks

To prove a conspiracy to pay illegal kickbacks under 18 U.S.C. § 371, the government had to prove (1) that Defendant and one or more co-conspirators agreed to pay illegal health care kickbacks for referrals to testing laboratories; (2) that Defendant became a member of the alleged conspiracy knowing at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act after October 2018 for the purpose of carrying out the conspiracy. The Court finds that a rational jury had sufficient evidence to convict Defendant of Count 4.

The government presented evidence from Marc Jablonski, who testified that he had pleaded guilty to receiving illegal kickbacks, and that he had conspired with Defendant and others, including Renee Schena and Paul Haje, to enact the scheme. 8/9/22 Trial Tr. 743:10–744:21. Under the scheme, Arrayit's marketing representatives were to receive as kickbacks a percentage of the net reimbursement from insurers. Trial Ex. 472. Mr. Haje testified that Defendant approved and was fully aware of the pay structure, and that the pitch to marketers was that "you'll get 50 percent of the insurance reimbursement[;] you can make up to $5,000 off of a single allergy test." 8/11/22 Trial Tr. 1333:22–1334:2. Mr. Jablonski testified that he presented Arrayit's marketing plan to doctors and the government introduced the presentation that Mr. Jablonski made to doctors. *Id.* at 783:7–10; Trial Ex. 903. Mr. Jablonski and other marketers targeted "naïve" doctors to persuade them to order Arrayit's more expensive and unnecessarily broad blood tests, rather than more efficient and cheaper skin allergy tests. 8/9/22 Trial Tr. 771:11–775:6. Mr. Jablonski received payments from Arrayit based on patients referred by doctors. Trial Exs. 900, 901. The government presented evidence that Defendant informed Mr. Jablonski of a new immunotherapy pitch to make to doctors, and that Mr. Jablonski subsequently induced doctors to order Arrayit tests with a pitch that doctors could make up to $1.2 million a year from immunotherapy after using Arrayit's allergy test. Trial Exs. 644, 903; 8/9/22 Trial Tr. 771:11–777:22. Further, Mr. Jablonski explained that he and other marketers made the decision as to which laboratory to send patient blood samples to following receipt from a doctor's office, and that they sent blood samples to Arrayit because of the kickbacks Arrayit paid. 8/9/22 Trial Tr. 763:7–17.

As the Court has previously noted, there is no requirement that a kickback scheme involve direct interaction between a marketer and patient; it is sufficient that Defendant arranged to pay marketers like Mr. Jablonski to induce doctors to refer patients to Arrayit, and to directly send patient blood samples to Arrayit. ECF No. 135 (Order Denying Motion to Dismiss) at 7. Based on the evidence described above, a rational jury could find that Defendant and one or more co-conspirators, including Mr. Jablonski, agreed to a scheme wherein Arrayit paid marketers illegal

1  health care kickbacks for referrals to testing laboratories, that Defendant became a member of the
2  conspiracy to induce referrals to Arrayit, and that one or more overt acts, including payments to
3  marketers and marketing toward doctors, occurred in the relevant time frame.

### 4. Counts 5–6: Payment of Illegal Kickbacks

To prove payment of illegal kickbacks under 18 U.S.C. § 220(a), the government had to prove that Defendant (1) knowingly and willfully offered or paid renumeration, such as a kickback, bribe, or rebate (2) to induce a referral of an individual to a laboratory for services performed by the laboratory (3) that were covered in whole or part by a health care benefit program. The evidence described above is sufficient to satisfy the first two elements, and the government produced evidence—and Defendant does not contest—that the government and private insurers are health care benefit programs that covered the allergy testing services. *See* Mot. 8–9; Opp. 13–16. The jury therefore had sufficient evidence on which to convict Defendant of Counts 5 and 6.

### B. Motion for New Trial

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A conclusion that "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred" may constitute grounds for a new trial. *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992) (quoting *United States v. Lincoln*, 630 F.2d 313, 319 (8th Cir. 1980). In its evaluation, "[t]he district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *Id.* The burden of justifying a new trial rests with the defendant. *See United States v. Shaffer*, 789 F.2d 682, 687 (9th Cir. 1986). The Ninth Circuit has emphasized that a motion for a new trial "should be granted 'only in exceptional cases in which the evidence preponderates heavily against the verdict.'" *United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir. 1984) (internal quotation omitted).

Case No.: 20-cr-00425-EJD-1
ORDER DENYING DEFT.'S MOTS. FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL
9

### 1. Counts 7–9: Securities Fraud

Counts 7 through 9 charged Defendant with securities fraud, namely, deceiving Arrayit investors and the general public as to Arrayit's financial performance and contracts. *See* Superseding Indictment ¶¶ 59–60. To obtain a conviction on each charge, the government had to prove that (1) Defendant willfully used a device or scheme to defraud, made untrue statements of material fact, failed to disclose material facts that resulted in making his statements misleading, or engaged in any act that operated or would operate as fraud or deceit upon any person; (2) such acts or failures to act were done in connection with the purchase and sale of Arrayit securities; (3) Defendant directly or indirectly used the wires or mails in connection with the acts, statements, or failures to disclose; and (4) Defendant acted knowingly.

Defendant argues that the evidence presented did not meet any of the elements necessary to prove the securities fraud counts, and the jury relied on improper legal testimony about SEC rules and regulations from the witness Thomas Carocci to reach its verdict. Mot. 9–10. That, is, Defendant contends that the government improperly introduced opinion evidence as to whether Defendant violated SEC rules to obtain a conviction on securities fraud. *Id.* at 10.

Mr. Carocci testified as a securities markets and securities law expert about the duty of publicly traded companies with respect to honesty in communications with shareholders. 8/9/22 Trial Tr. 900:18–24, 911:21–25. Mr. Carocci testified generally about industry standards and requirements under securities laws and regulations. *See id.* at 900:18–917:15. He testified that Arrayit was a publicly traded company with an obligation to be truthful to shareholders, but did not provide an opinion as to whether Arrayit had met or violated that duty. *See id.* Nor did Mr. Carocci provide any opinion regarding Defendant. *See id.* Under these circumstances, the Court cannot say that the government improperly introduced opinion evidence from Mr. Carocci regarding whether Defendant violated SEC rules.

Defendant argues that Jury Note No. 7 indicates that the jury looked to Mr. Carocci as a source of relevant law regarding the government's burden as to Counts 7 through 9. Mot. 9–10. Jury Note No. 7 reads: "Follow up to Note # 6 [requesting "transcript for expert witness Thomas

Case No.: 20-cr-00425-EJD-1
ORDER DENYING DEFT.'S MOTS. FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL
10

Carocci"]. Are publicly traded companies required to be truthful on all forms of communication[s, e.g.] press release, email, tweets[?]  Is the bar lower for one form of communication (e.g. tweet) vs another form (e.g. press release or email)[?]" ECF No. 230 at 14–16.  In response to this note, the Court brought the jury in for a readback of Mr. Carocci's testimony regarding the duty of publicly traded companies to be honest with shareholders, which "applies to all communications . . . anything that comes from a company . . . [including] press releases, emails, postings, that type of stuff." *Id.* at 17; 8/9/22 Trial Tr. 911:21–25; 912:1–8, 14–19.  The jury's question, and the answer it received, did not advise the jury on law as to the government's burden as to Counts 7 through 9, *i.e.*, that (1) Defendant willfully used a device or scheme to defraud, made untrue statements of material fact, failed to disclose material facts that resulted in making his statements misleading, or engaged in any act that operated or would operate as fraud or deceit upon any person; (2) such acts or failures to act were done in connection with the purchase and sale of Arrayit securities; (3) Defendant directly or indirectly used the wires or mails in connection with the acts, statements, or failures to disclose; and (4) Defendant acted knowingly.  Therefore, Mr. Carocci's testimony in no way constituted improper opinion testimony, let alone a "serious miscarriage of justice" requiring a new trial.  *Alston*, 974 F.2d at 1211.

### 2.     Counts 1–6: Health Care Fraud and Illegal Kickbacks

Lastly, Defendant argues that the Court—should it decline to grant a judgment of acquittal as to Counts 1 through 6—should vacate the verdicts and grant a new trial as to those counts because the jury "indicated there was confusion as to the elements of knowledge and willfulness, at least as it applied to Counts [1 through 6]." Mot. 10.  Jury Note No. 5 (in fact the sixth jury note) asked: "Does 'wil[l]ful' include 'knowing'?  Is it possible to be 'wil[l]ful' but not 'knowing'[?]" ECF No. 230 at 12.  In response, the Court referred the jury to the instructions defining "willfully" and "knowing" as to each set of counts, and stated that the government "must prove each element of each offense as indicated in the instructions for each offense charged." *Id.* at 13.

"Jurors are presumed to follow the court's instructions." *United States v. Reyes*, 660 F.3d

Case No.: 20-cr-00425-EJD-1
ORDER DENYING DEFT.'S MOTS. FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL
11

454, 468 (9th Cir. 2011). The jury was told, both in the original instructions and the response to the note, that the government was required to prove each element of each count. As such, there is no reason to suspect that the jury reached its verdicts as to Counts 1 through 6 without having found that the government met its burden as to each element of each count. The Ninth Circuit has emphasized that jury verdict be overturned and a motion for a new trial "granted 'only in exceptional cases,'" *Rush*, 749 F.2d at 1371, and the jury's use of notes as intended—to clarify questions—does not here constitute an "exceptional case."

### III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion for a judgment of acquittal as to Counts 1 through 6, **DENIES** Defendant's motion for a new trial as to Counts 7 through 9, and **DENIES** Defendant's motion for a new trial as to Counts 1 through 6.

**IT IS SO ORDERED.**

Dated: April 29, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 20-cr-00425-EJD-1
ORDER DENYING DEFT.'S MOTS. FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL
12