CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

LORINDA I. LARYEA (DCBN 99769)
Chief, Fraud Section

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

LAURA CONNELLY (DCBN 241537)
Acting Assistant Chief, Fraud Section

U.S. Department of Justice, Fraud Section
1400 New York Avenue NW
Washington, DC 20005
Telephone: (202) 307-1423
laura.connelly@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK SCHENA,<br><br>Defendant. | NO. CR 20-425 EJD<br><br>UNITED STATES' BRIEF REGARDING RECALCULATION OF SECURITIES FRAUD RESTITUTION AND REQUEST FOR EVIDENTIARY HEARING |

The government submits this brief in response to the Court's request for additional briefing regarding the recalculation of the securities fraud restitution ordered by the Ninth Circuit on remand. *See* ECF 289. For the reasons articulated below, the United States asks that the court issue an amended restitution order in the amount of $11,088,743.08 as shown in Exhibit 1. This filing includes the government's request for an evidentiary hearing to present testimony on the calculation of this amended restitution amount.

## I. Procedural Background

On October 18, 2023, the Court sentenced Defendant Mark A. Schena to 96 months in custody, three years' supervised release, and $900 in special assessment fees, and ordered restitution. ECF No. 252. The restitution award of $24,289,540.95 included $21,562,300.81 in restitution for Arrayit shareholders who suffered losses due to the securities fraud scheme. ECF 273. On July 11, 2025, the Ninth Circuit affirmed defendant's convictions, but vacated the securities fraud restitution award and remanded for a redetermination of that portion of the restitution award. *United States v. Schena*, Case No 23-2989, ECF No. 68.1 (9th Cir. July 11, 2025).

On January 6, 2026, this Court ordered the Government and counsel for Mr. Schena to submit additional briefing addressing the restitution award on the securities fraud violations in this matter, following the Ninth Circuit's remand. *See* ECF 289.

## II. Legal Framework

For restitution, the government need only prove the victims' actual loss amount by a preponderance of the evidence to allow the Court to estimate the losses with "some reasonable certainty." *United States v. Holmes,* 2023 WL 3489320, at *2 (N.D. Cal. May 16, 2023) (quoting *United States v. Kennedy*, 643 F.3d 1251, 1261 (9th Cir. 2011)). The Ninth Circuit has noted that its precedent "grants 'district courts a degree of flexibility in accounting for a victim's complete losses.'" *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) (quoting *United States v. Gordon*, 393 F.3d 1044, 1053 (9th Cir. 2004), *abrogated by Lagos v. United States*, 584 U.S. 577 (2018)).

While the Mandatory Victims Restitution Act (18 U.S.C. § 3663A) and the Victim and Witness Protection Act (18 U.S.C. § 3663) do not apply to Title 15 offenses, *see United States v. Acord*, 790 F. App'x 18, 19 (5th Cir. 2020), the Ninth Circuit has been clear that a "the Supervised Release Statute,

together with the Probation Statute, unambiguously authorizes federal courts to order restitution as a condition of supervised release for any criminal offense . . . for which supervised release is properly imposed." *United States v. Batson*, 608 F.3d 630, 635 (9th Cir. 2010). The Guidelines also contemplate restitution as a condition of supervised release "if the offense is not an offense for which restitution is authorized under 18 U.S.C. § 3663(a)(1) but otherwise meets the criteria for an order of restitution under that section." U.S.S.G § 5E1.1(a)(2).

The Ninth Circuit, in remanding the case for a recalculation of the securities fraud restitution, held that the $21 million originally ordered was not appropriate because "[a] restitution award 'can compensate 'only for the loss caused by the specific conduct that is the basis of the offense of conviction,' so long as that offense does not involve an element of scheme, conspiracy or pattern of criminal activity." *United States v. Schena*, Case No 23-2989, ECF No. 68.1 (9th Cir. July 11, 2025) (quoting *United States v. Batson*, 608 F.3d 630, 637 (9th Cir. 2010) and *Hughey v. United States*, 495 U.S. 411, 413 (1990)). The Ninth Circuit held that a scheme was not an element of Counts 7 through 9 because in this Court's opinion regarding loss for purposes of the Sentencing Guidelines, "the district court treated Mr. Schena's conduct of conviction as the three instances of false disclosures identified in Counts 7–9." *Id.* (cleaned up). Accordingly, the Ninth Circuit directed that this Court "calculate [restitution] based on the specific conduct that was the basis for these three counts of conviction." *Id.* The Ninth Circuit further directed that, in re-calculating restitution, this Court could consider defendant's objections about the value of Arrayit's stock upon his arrest and the government's reliance on a first-in, first-out methodology. *Id.*

## III. Argument

While the government continues to submit that Counts 7 through 9 of the indictment were "scheme counts," it submits this revised position on restitution in light of the Ninth Circuit's order holding that restitution must be based on the specific conduct underlying these three counts of conviction.

Counts 7, 8, and 9 of the indictment charged three specific false statements that defendant made about Arrayit:

- Count 7: November 19, 2018 press release about "an allergy testing agreement" with multibillion-dollar company in Palo Alto, California
- Count 8: August 8, 2019 tweet about "$240,000,000 test kit manufacturing run" disseminated to market
- Count 9: March 21, 2020 emails to investors about demand for Arrayit's COVID-19 tests and coordination with government agencies.

None of these statements were corrected to the market (meaning, the market was not aware that these statements may have been false), until the complaint in this case was unsealed and defendant was arrested for securities fraud on June 9, 2020. *See* ECF Nos. 1, 3. The complaint announced publicly (and for the first time) that defendant's statements about Sutter Health (which ultimately became Count 7 of the indictment), the $240 million manufacturing run (which ultimately became Count 8 of the indictment), and Arrayit's COVID-19 test (which ultimately became Count 9 of the indictment), were false. ECF No. 1 at ¶¶ 55 – 58; 68 – 74.

Thus, the government submits that starting on November 19, 2018, the date of the false press release charged in Count 7, defendant had disseminated false information to the market and investors about Arrayit. As a result, any investor who invested money on or after that date, through June 8, 2020, the last trading day before the disclosure of the fraud on June 9, 2020, is entitled to restitution. The United States has calculated the equity accumulation between November 19, 2018 (the date of the false press release about Sutter Health charged in Count 7) through June 8, 2020 (the day before the market was first alerted to the fact that the Sutter Health press release was false) for each account represented in trading data obtained from the Securities and Exchange Commission ("SEC"). This analysis is similar to the analysis previously conducted by government declarant Michael Petron and submitted to the Court in connection with sentencing, but has been updated to calculate loss to investors for the period only connected to the specific conduct charged in Count 7.[1] *See* ECF 242, 242-1. The United States has prepared a schedule detailing the restitution calculation, which is filed under seal in Exhibit 1.

[1] Investor losses related to Counts 8 and 9 can be similarly calculated, but because they came after the false press release charged in Count 7 and were revealed as false at the same time as Count 7, victim losses associated with those counts are incorporated in the analysis of loss tied to Count 7.

The government requests that Mr. Petron be permitted to testify at an evidentiary hearing, during which he will explain his calculation of restitution using the following parameters:

- A review of the individual account histories for the entire time frame SEC trading data was provided: October 1, 2013 through October 27, 2020;
- Restitution was calculated using a first-in, first-out methodology for accounts in the trading data that did not have any short sale transactions and ended at the time of the disclosure in a positive position (meaning they still held shares) for the time period of November 19, 2018 to June 8, 2020;
- The share price used to calculate the share's close out position was either the terminal value per share of $0.0110 USD (the end of day price as of the date of the disclosure of the fraud – June 9, 2020) or actually executed close-out value of the share (meaning the price at which the share was sold). The analysis used whichever share price generated the lower loss, meaning that it used the more conservative calculation of loss; and
- The analysis reviewed the victim submissions and made two adjustments, to include restitution calculations for victims who submitted documentation showing losses but whose transactions were not shown in the SEC trading data.

The amended calculation continues to account for the victim submissions and restitution requests received in advance of sentencing, which have been provided to the Court, the Probation Office, and defendant, and which is also detailed in the records attached as Exhibit 2. Exhibit 2 is a schedule showing the updated calculations for each victim that submitted a victim impact statement or restitution request in this matter.

This amended calculation allows the Court to estimate the losses with "some reasonable certainty." *Holmes,* 2023 WL 3489320, at *2 (N.D. Cal. May 16, 2023). The government's calculation is based on each specifically identifiable victim who was a former Arrayit shareholder and who, as a result of the instant offenses of conviction, lost value in their stock.[2]

[2] The accuracy of the government's calculation is best demonstrated by comparing its analysis to the restitution submissions by the victims in this case. In most cases where victims submitted supporting documentation, the amounts were generally consistent with the government's original restitution analysis. *See* Exhibit 2.

## IV. Request for an Evidentiary Hearing

The government seeks an evidentiary hearing to put on testimony related to its restitution calculation. At the evidentiary hearing, the government plans to call Michael Petron, the declarant referenced in the government's October 5, 2023 sentencing submissions. *See* ECF 242, 242-1. Mr. Petron is a Managing Director with Stout Risius Ross, LLC ("Stout"), as well as a Certified Public Accountant licensed in the Commonwealth of Virginia and a Certified Fraud Examiner. He has a master's degree in Accountancy and a master's degree in Statistical Science. The government expects Mr. Petron to testify about the restitution calculation described in this brief, which was conducting using the SEC trading data (also known as "bluesheet data"). In so doing, he will address how he calculated the end position of Arrayit's stock price on June 9, 2020 and the methodology for his calculation.

## CONCLUSION

The United States respectfully requests that this Court order Mr. Schena to pay $11,088,743.08 in restitution, as detailed in Exhibits 1 and 2.

DATED: May 15, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
LAURA CONNELLY
Acting Assistant Chief
Fraud Section, U.S. Department of Justice